### AT THE

## OCTOBER SESSION 1870, IN BOSTON.

PRESENT:

HON. REUBEN A. CHAPMAN, CHIEF JUSTICE.
HON. HORACE GRAY, JR.,
HON. JOHN WELLS,
HON. SETH AMES, } JUSTICES.
HON. MARCUS MORTON,

## BARNSTABLE COUNTY.

### JAMES RICH vs. STEPHEN A. RYDER.

After verdict in an action of replevin, it is too late to move to dismiss the action for insufficiency of the replevin bond.

A usage of a seaport is valid, for the general agents of whaling vessels, sailing therefrom on shares, to take possession of the supplies on board at the end of the return voyage, and have them appraised and distributed among the owners if they can agree on a distribution in kind, or, if they disagree, then to sell the supplies by auction and distribute the proceeds in settling the voyage.

The general agent of a whaling vessel at a port where it is the usage for such agents to take possession of supplies remaining on board at the end of the voyage, and distribute or sell them in settling the voyage, may, after demand and refusal, maintain an action of replevin against the master for such supplies, although both parties, with others, are joint owners of the supplies and the vessel.

REPLEVIN of fifty iron lances, eight hundred fathoms of whale line, one whale gun, four sets of whale boat oars, three blubber

hooks and a blubber mincing machine, and various other articles usual in the fitment of whaling vessels, including some provisions and mess table furniture. Trial, and verdict for the plaintiff, in the superior court, before *Putnam*, J., who allowed a bill of exceptions of which the following are the material parts:

" It appeared in evidence, that the articles named in the writ were a portion of the supplies (great and small generals) of the schooner Joseph Lindley, which sailed on a whaling voyage out of Provincetown. The defendant was master of the schooner, and the plaintiff and defendant, with other persons, were joint owners of the vessel as well as of the supplies. The master's proportion of the supplies was one half, and one sixteenth of the other half. The vessel sailed on shares during her last voyage, and on her return, at the end of the voyage, the defendant took the articles named in the writ into his exclusive possession, and so retained them, until the plaintiff, after a demand made by him on the defendant and the defendant's refusal to deliver them up, replevied them under this writ.

" The plaintiff offered evidence tending to show that he was the general agent of the vessel and acted as such; that, by the usage in the port of Provincetown, it was the duty of such agent, at the end of each voyage which was sailed on shares, to take possession of all the supplies on board the vessel, have them appraised and distributed among the owners, if they could agree upon a distribution, and if not, to sell them at auction, and settle up the voyage; that, on the return of this vessel from the last voyage, the plaintiff demanded of the defendant the possession of the articles named in the writ, with the other supplies, for the purpose of complying with such duty, and replevied them after the defendant's refusal to give them up, and proceeded to close up the voyage in the manner indicated.

" The defendant contended, on this evidence, and asked the judge so to rule, that this action could not be maintained. The judge declined so to rule, but instructed the jury that, although ordinarily, as between tenants in common of personal property, one cotenant could not maintain replevin against his cotenant, yet he might do so in a case where, at the time, he had a right of

possession as against such cotenant; and that, in this case, if the jury were satisfied that the plaintiff was the general agent of this vessel, and acted as such with the consent of the other part owners, and that by a well known usage in Provincetown, in reference to vessels engaged in whaling voyages and sailing on shares, it was the duty of the agent, at the end of each voyage, for the purpose of settling up the voyage, to take exclusive possession of the supplies, sell them and distribute the proceeds among such own- ers, the plaintiff would have a right to the possession of these articles, for the purpose aforesaid, as against the defendant who detained them from him, and could maintain this action. To the ruling of the court, that this action could be maintained on the evidence, the defendant excepted.

" After verdict, the defendant filed a motion to dismiss the ac- tion, on the ground that the court had no jurisdiction, by reason of the insufficiency of the bond filed in the case. This motion the judge overruled, and the defendant excepted."

*J. L. Eldridge*, for the defendant.

*J. M. Day*, for the plaintiff.

CHAPMAN, C. J. 1. The motion to dismiss on account of the insufficiency of the replevin bond, having been filed after verdict, was made too late. Gen. Sts. *c.* 129, § 79.

2. The usage at the port of Provincetown related to the method of disposing of the supplies which were left at the termination of the voyage, for the purpose of settling up the voyage, and is valid. We can see nothing unreasonable in it, and it has all the charac- teristics of a legal usage, being a mere method of transacting business. *Dickinson* v. *Gay*, 7 Allen, 29.

3. The principal question in the case is, whether the plaintiff can maintain replevin for goods of which he and the defendant, with the other part owners, are tenants in common. Generally one tenant in common cannot maintain replevin against a coten- ant, because tenants in common have each and equally the right of possession. *Barnes* v. *Bartlett*, 15 Pick. 71, 75. But the plaintiff contends that by agreement of the part owners he had a right of possession. During the voyage, it was necessary that the master should have the exclusive possession of the ship's

stores, not only for the success of the voyage, but for the preservation of the lives and health of all on board. The other part owners, though tenants in common with him, had no right of possession. His right was implied in the contract by which he became master. But at the termination of the voyage it was equally necessary, and equally implied by the terms of the plaintiff's contract with the other part owners, including the master, that as general agent of the vessel he should have the exclusive possession, in order that he might perform the duty which he had undertaken to perform, and was legally liable to them to perform; namely, that he might cause an appraisal of the stores to be made, and either distribute or sell them, and settle up the voyage according to the usage which constituted a part of the contract between him and them.

His right of possession must be irrevocable in order to be valid and effectual. His authority may not be strictly a power coupled with an interest, as defined by Chief Justice Marshall in *Hunt* v. *Rousmanier*, 8 Wheat. 174, and yet may be irrevocable. In that case, a power of attorney had been given to sell a chattel which the agent held as security for a note given by his principal, and it was held to be irrevocable during the life of the principal, though not a power coupled with an interest. See also Story on Agency, § 477, and note. But in *Smart* v. *Sanders*, 5 C. B. 895, Wilde, C. J., says, where an agreement is entered into on sufficient considerations, whereby an authority is given for the purpose of securing some benefit to the donee of the authority, such authority is irrevocable, and it is what is commonly meant by an authority coupled with an interest.

In the present case, the plaintiff's agreement with the other part owners to act as general agent was upon a good consideration. It secured a substantial benefit to himself and to each of his cotenants for whom he undertook to act, and he had a right to earn and receive his commissions. His possession was not that of a mere servant whose possession was the possession of the other part owners; nor that of a mere cotenant; but it was that of a contractor, who was under obligation to them to perform his contract. He had not only a right of exclusive possession against

each part owner, but an interest that constituted a special prop-
erty, at least equal to that of an auctioneer; and an auctioneer
has an interest sufficient to maintain replevin.   *Tyler* v. *Freeman*,
3 Cush. 261.

Under the Gen. Sts. *c.* 143, § 10, replevin lies where goods are
taken or detained from the owner or person entitled to the pos-
session.   This language is broad enough to include the plaintiff's
right of possession.   It was always true that a special property
was sufficient to maintain replevin.   Co. Lit. 145 b.   Gilbert on
Replevin, 157.   And it has been held that one who has a tem-
porary property in a chattel, and delivers it to the general owner
for a special purpose, may, after that purpose is satisfied, and
during his temporary right, maintain trover for it against the
general owner.   *Roberts* v. *Wyatt*, 2 Taunt. 268.   The interest
sufficient to maintain trover is sufficient to maintain replevin.
3 Steph. N. P. 2485.

As the plaintiff has a legal right to settle up the voyage in the
method agreed upon, and as possession of the property is neces-
sary for that purpose, he may have a legal remedy to obtain
that possession; and replevin is the appropriate remedy.

*Exceptions overruled.*