## LAWRENCE McLAUGHLIN vs. CHARLES COWLEY.

Suffolk.    November 26, 1877. — September 1, 1879.

A defamatory statement contained in the declaration in an action, signed by coun-
   sel, if not pertinent or material to the issue, is not privileged; and, in an action
   of libel against the counsel, he cannot justify by showing his belief that it was
   true, the sources of his information, or his instructions from his client.
In an action for libel, evidence that the plaintiff told the defendant, after the writ
   was brought, that he thought the defendant was justified in doing what he did,
   and that, if he had been in the defendant's place, he would have done the same,
   is inadmissible in behalf of the defendant, under an answer containing merely
   a general denial, and setting up the truth of the statement.
A declaration in an action of libel alleged that the defendant in a paper writing, a
   copy of which was annexed, falsely and maliciously charged the plaintiff with
   the crime of murder, and set forth the words, as they appeared in the copy of
   the paper writing annexed.   The answer set up the truth of the paper.   *Held*,
   that the truth of the charge contained in the declaration was properly put in
   issue.
The fact that a writ, entered in this court, does not have indorsed on or annexed
   to it the affidavit required by the Gen. Sts. *c*. 112, § 6, is a defect in the writ not
   affecting the jurisdiction of the court, and, under the Gen. Sts. *c*. 129, § 79, is
   not a cause for arresting judgment after verdict.

TORT.   The declaration contained eight counts.   The second
count for libel was as follows:

" And the plaintiff further says, that the said defendant made
and published and filed and caused to be filed in the office of the
clerk of the Supreme Judicial Court in and for the county of
Suffolk, and made a matter of public record in said court, a false
and malicious libel concerning the plaintiff, a copy of which is
hereto annexed, and therein falsely and maliciously charged the
plaintiff with the crime of murder, in the words following; to
wit, ' and well knew that said McLaughlin ' (meaning the plain-
tiff) ' caused to be put to death, immediately after its birth, an
illegitimate child born to him ' (meaning the plaintiff) ' by one
Sarah Clark, of said Newton;' and by the same words falsely
and maliciously accused the plaintiff of the crime of adultery by
thus charging that an illegitimate child was born to the plaintiff
by one Sarah Clark, the plaintiff being a married man and having
a lawful wife alive, other than the said Sarah Clark; and the
defendant, in said libellous paper, falsely and maliciously accused
the plaintiff of said crimes of murder and adultery, and other
crimes and felonies; and the plaintiff avers that said libellous

paper was made and published and filed as aforesaid by the defendant, of his express malice and without color for making said imputations, and with a design to defame and slander the plaintiff."

Annexed to this count was a copy of the plaintiff's declaration in the case of Nancy D. Leggate against Elbridge Moulton, signed by the defendant in the case at bar as attorney for the plaintiff in that case, and which alleged that the plaintiff was seised in fee of a lot of land in Newton worth ten thousand dollars, and desired to sell the same; that Lawrence McLaughlin requested the plaintiff to employ him as her agent to sell the same, and to execute to him, in form of law, a conveyance thereof, to enable him to dispose of it for her; that the defend· ant falsely and fraudulently represented to the plaintiff that McLaughlin was a trustworthy person; that the defendant well knew that the representations were false; "and well knew that said McLaughlin had caused to be put to death, immediately after its birth, an illegitimate child born to him by one Sarah Clark, of said Newton;" that, in consequence of the representations and statements so made to her by the defendant, she, not knowing to the contrary, but believing therefrom that McLaughlin was a responsible and trustworthy man, was induced to employ him to sell said estate, and, for the better enabling him to dispose thereof, to execute to him a conveyance, in form of law, of her estate; that McLaughlin, contrary to his duty as her agent, made away with, and converted to his own use, the sum of seven thousand dollars, which he received as the proceeds of the sale by him of said estate; and that in consequence of employing McLaughlin as her agent, she had lost the possession, use and income of her estate, and all the proceeds accruing from the sale thereof.

The answer to the second count was as follows: "And the defendant further answering says, that, as to the second count in the plaintiff's declaration, he denies each and every allegation therein contained.  And the defendant denies that he ever made and published and filed, and caused to be filed, in the office of the clerk of the Supreme Judicial Court in and for the county of Suffolk, or in any other court, and made a matter of public record in said Supreme Judicial Court, or in any other court, a

false and malicious libel concerning the plaintiff. And he denies that he ever therein, or in any other way, falsely and maliciously charged the plaintiff with the crime of murder, or with the crime of adultery, or any other crime or felony; the defendant never published in said court, nor in any other court, a paper a copy of which is annexed to the plaintiff's declaration. And the defendant further answering says, that if the plaintiff shall prove that he ever filed or published, or caused to be published, said paper, then the defendant says the same was and is true, and not libellous."

At the trial in this court before *Soule,* J., at April term 1877, the plaintiff proved the publication of the libel alleged in the second count; and that, on a motion being made in the case of Leggate against Moulton to strike the alleged libel from the declaration in that case, the court ordered it to be struck out.

The defendant offered to testify that, when he framed and filed the declaration in Leggate against Moulton, he believed the statements contained in the alleged libel to be true; and also offered to testify as to the information on which he made the statements; that he was instructed by Mrs. Leggate to make them; that, after the present suit was brought, the plaintiff told him that he thought he, the defendant, was justified in doing what he had done in these matters; and that, if he had been in the defendant's place, he would have done the same. The judge excluded the evidence.

The defendant also offered evidence tending to prove the truth of the defamatory statements in the alleged libel; but the judge excluded the evidence as incompetent under the pleadings.

The jury returned a verdict for the plaintiff on the second count; and the defendant alleged exceptions.

At September term 1877, the defendant moved to dismiss the action, because there was not indorsed on or annexed to the writ, as required by the Gen. Sts. *c.* 112, § 6, an oath or affirmation that the matter sought to be recovered actually equals in amount or value the sum of four thousand dollars. *Morton,* J., reserved the question arising on this motion for the determination of the full court.

*C. Cowley, pro se.*

*J. F. Pickering & C. H. Chellis,* for the plaintiff.

LORD, J. It was stated in the opinion of this court in the recent case of *Rice* v. *Coolidge*, 121 Mass. 393, that it seems to be settled by the English authorities that judges, counsel, parties and witnesses are absolutely exempted from liability to an action for defamatory words published in the course of judicial proceedings; and that the same doctrine is generally held in the American courts, with the qualification, as to parties, counsel and witnesses, that their statements made in the course of an action must be pertinent and material to the case. The doctrine thus qualified was set forth by *Shaw*, C. J., in an elaborate opinion, in *Hoar* v. *Wood*, 3 Met. 193. The qualification of the English rule is adopted in order that the protection given to individuals in the interest of an efficient administration of justice may not be abused as a cloak from beneath which to gratify private malice. The question presented by the first exception in this case depends upon the proper application of this rule.

A careful examination of the declaration in the case of Leggate against Moulton shows that that action was brought to recover damages for losses sustained by Leggate in consequence of employing McLaughlin, the plaintiff in the case at bar, as her agent; and that he was so employed because Leggate believed certain false representations made by Moulton as to McLaughlin's trustworthiness and fitness for the agency. The declaration sets forth the representations made, alleges that they were false and that Moulton knew it, and then proceeds with the statements which are here charged to be libellous. These statements relate to matters not mentioned in the representations made by Moulton. They do not directly negative the truth of any of his representations, and were not necessary nor material to a full and complete presentation of the case on which Leggate asked for damages. The ground of action was not strengthened by adding them, nor did they furnish any basis for enhancing the damages which might be recovered. They were not pertinent to the action, and were struck out of the declaration, by the court, on motion of Moulton. They contained charges against the present plaintiff of criminal conduct of the grossest character.

To hold that such statements, thus uncalled for and irrelevant, are privileged, as part of pleadings in a cause, would be to disregard the salutary modification of the English rule which has

been made by the American courts, and is stated in *Rice* v. *Coolidge*. The defendant stands, therefore, as to liability to action on account of these statements, precisely as if he had published them in a newspaper, and cannot justify, by showing his belief that they were true, the sources of his information, or his instructions from his client. It is only when words are published on an occasion which makes them privileged, that the belief of the publisher that they are true can be shown.

The evidence of the defendant, " that the plaintiff told him, after this suit was brought, that he thought the defendant was justified in doing what he had done in these matters, and that, if he had been in defendant's place, he would have done the same," was properly excluded. It did not tend to establish any fact in issue. There was no plea of justification to which it could apply, and, if admitted, it could not have produced any effect on the minds of the jury except an improper one.

The remaining question presented by the bill of exceptions is, whether it was error to exclude the evidence tendered by the defendant in justification of the slander charged in the second count of the plaintiff's declaration. This depends upon the question whether the truth of the charge contained in that count was well pleaded; for, if so pleaded, it was competent for the defendant to introduce the evidence. Gen. Sts. *c.* 129, § 77.

It is undoubtedly true that, under the present system of pleading in this Commonwealth, the answer must set forth in clear and precise terms each substantive fact intended to be relied on in avoidance of the action. Gen. Sts. *c.* 129, § 20. The plaintiff does not charge the defendant with having accused him of the crime of murder, except as the legal result of the force of the language used by him, which language is quoted from the paper which is alleged to be a libel; and the charge against him is for the use of that particular language. The defendant in his answer alleges that, if the plaintiff shall prove that he published that paper which contained those words, the same was and is true. It would be a strained and unnatural construction of this language to say that it did not allege that the facts stated in the declaration and copied from the paper into the declaration were true. It does, therefore, set out and declare the exact facts upon which the defendant relies to support his justification, viz.:

That the plaintiff caused to be put to death, immediately after its birth, an illegitimate child born to him by one Sarah Clark of said Newton. It is these facts which he alleges to be true, and to which he is necessarily confined in offering proof of his justification. It certainly cannot be said that the answer did not give full notice of the exact and precise facts upon which he relied; and if there were any technical objection to the mode in which notice is given, it was a matter of which the plaintiff should have availed himself before the trial. We think, therefore, that, because of the refusal of the presiding judge to admit proof of these facts, the exceptions must be sustained.

After the trial, a motion was made by the defendant to dismiss the action for want of jurisdiction in this court to try it. This motion is based upon the Gen. Sts. c. 112, § 6, which provides that this court shall have original and concurrent jurisdiction with the Superior Court " of civil actions in which the damages demanded or property claimed exceed in amount or value four thousand dollars if brought in the county of Suffolk, and one thousand dollars if brought in any other county, if the plaintiff, or some one in his behalf, before service of the writ, makes oath or affirmation before some justice of the peace that he verily believes the matter sought to be recovered actually equals in amount or value said sums respectively; a certificate of which oath or affirmation shall be indorsed on or annexed to the writ."

But by the Gen. Sts. c. 129, § 79, " a judgment shall not be arrested for any cause existing before the verdict, unless the same affects the jurisdiction of the court; and when the defendant has appeared and answered to the merits of the action, no defect in the writ or other process by which he has been brought before the court, or in the service thereof, shall be deemed to affect the jurisdiction of the court."

In this case, it is entirely clear that this court has jurisdiction both of the subject-matter of and parties to the suit, if brought before it by proper process; and it has been frequently held by this court, that a defective writ is within the meaning of the statute last cited. That statute was originally part of the practice acts of 1851, c. 233, and 1852, c. 312, and within a year or two afterwards this precise question arose in *Lincoln* v. *Taunton Cop-*

*per Manuf. Co.* 11 Cush. 440, and the court in that case indicated a strong inclination to regard the omission of the affidavit as a defect in the process; and that intimation has been, as we think, properly acquiesced in and practised upon without objection for more than a quarter of a century; and if we could have had any doubt upon it as an original question, which we do not mean to intimate, we think this acquiescence for so long a period in the intimation of the court would render a change in the practice more proper for the legislative than for the judicial department of the government.    See also *Seagrave* v. *Erickson*, 11 Cush. 89; *Rich* v. *Ryder*, 105 Mass. 306; *Gray* v. *Thrasher*, 104 Mass. 373; *McAllister* v. *Burrill*, 98 Mass. 334; *Emery* v. *Osgood*, 1 Allen, 244.                                    *Exceptions sustained.*