# Supreme Court Decisions.

## LIBELOUS PUBLICATION AGAINST PHYSICIAN BY VILLAGE BOARD OF HEALTH.

### MAUK V. BRUNDAGE ET AL.

Decided, March 2, 1903.

*Village Board of Health Issues Publication—Containing Alleged Libel Against Physician—Evidence at first Objected to—Later Admission Cures Error in Sustaining Previous Objection—Publication Held Libelous per se—Duty of Court in Charge to Jury—Publication Proven and Physician Sufficiently Indicated—Plaintiff Entitled to Damages—Adjustment of Compensatory and Exemplary Damages—As to Defendants Guilty of Malice and Those Not—Laws of Libel—Rule of Damages—Evidence.*

1. Where at the trial of a cause to a jury a party offers evidence competent to the issue, which, upon objection by the opposite party, is not permitted to be given, but afterward, during the trial, the same witness being upon the stand, the subject of the former inquiry is without objection fully entered upon, both in chief and on cross-examination, and the questions which had been held incompetent fully answered, the error in sustaining the objection will be deemed cured. *Reynolds* v. *Tucker*, 6 Ohio St., 516, distinguished.

2 In an action for libel the question whether the publication is or not libelous *per se* is a question for the court. And where the publication is claimed to be privileged the question whether or not the occasion gives the privilege, the controlling facts being conceded, is also for the court.

3. The board of health of a village, as a preamble to an order directing the conduct of physicians and surgeons in the treatment of

119

obstetrical cases, passed and published the following: "Whereas the board of health of the village of Delphos, Allen and Van Wert counties, Ohio, after careful consideration, has become satisfied that in said village a number of deaths have recently resulted from the carelessness and negligence of the physician attending the patients in child birth soon after attending and handling other patients affected by blood poison and other infectious diseases, and that from the same cause others in said village have barely escaped death."

In an action by a physician against members of the board for libel in causing to be published the above preamble in a newspaper, the answer admitted the passage by defendants of the preamble and order as charged and that the same was placed on the record of the board's proceedings, but averred that defendants passed the order as members of the board of health; that they had reasonable and probable cause to believe and did believe the facts stated to be true, and published the same under an honest belief that such publication was required of them in the due discharge of their official duties as such board, and denied that the same was published maliciously, or with any intent to injure the plaintiff. *Held:*

(*a*) The preamble, construed in connection with the order and the pleadings, was libelous *per se*, and the publication of it was not privileged. It was the duty of the court to so instruct the jury, and not to submit those questions for their determination.

(*b*) Upon showing by a preponderance of the evidence that the preamble was published as charged, and that the plaintiff was the physician intended by defendants and understood by the community as such physician, plaintiff was entitled to recover at least such compensatory damages as were attributable to the publication.

4. If, in such case, the evidence warranted a finding, that, in the passing and publication of such preamble, some of the defendants were actuated by express malice, and others were not, and the jury should so find, it is proper practice to render a verdict against all of the defendants for compensatory damages and an additional amount as exemplary damages against those found to have been guilty of express malice.

Error to the Circuit Court of Van Wert County.

The plaintiff below, plaintiff in error here, is a practicing physician located at the village of Delphos, Ohio. The defendants below, defendants in error here, were members of the board of

health of that village. Plaintiff's action was in libel for publishing in the month of March, 1900, of and concerning plaintiff, in the columns of the Delphos *Herald,* the following resolution, viz.:

*"Board of Health—Resolutions adopted at a meeting this morning.*

"A meeting of the board of health was held at the mayor's office and the appended resolution adopted :

"An order to prevent and restrict infectious diseases. Whereas, the board of health of the village of Delphos, Allen and Van Wert counties, Ohio, after careful consideration, has become satisfied that, in said village, a number of deaths have recently resulted from the carelessness and negligence of the physician attending the patients in childbirth soon after attending and handling other patients affected by blood poison and other infectious diseases; and that from the same cause others in said village have greatly suffered and barely escaped death.

"Therefore, it is hereby ordered by the board of health of the village of Delphos, Allen and Van Wert counties, Ohio, that no physician and surgeon or midwife or other person who has heretofore or may hereafter practice or attempt to practice medicine, surgery or midwifery, in any of its branches, shall within said village attend as physician, surgeon or midwife, or touch or handle any woman in childbirth nor perform any act of surgery, or touch the mucous membrane of any person within thirty days after such physician and surgeon, midwife or other person practicing or attempting to practice medicine, surgery, or midwifery, has touched or handled any person affected with blood poison, gangrene, erysipelas, or other infectious disease, except in continuing to treat his or her patients affected with the same, and no other infectious disease.

"This order shall take effect and be in force from and after its adoption and publication according to law.    Adopted March 6th, 1900.

"W. R. Cochran, Jr., <i>President.</i>

"N. E. Brundage, *Clerk."*

Defendants' answer admitted that plaintiff was and is a practicing physician at Delphos, and that defendants were, at the date named, members of the board; admitted the passage of the resolution in their official capacity as such board, and that the same was placed on the record of their proceedings as such board, and denied all the other averments of the petition. The answer further averred that defendants had cause to believe and did believe the

facts mentioned in said order to be true, and that they did not publish said article and order maliciously, nor with any intent to injure the plaintiff, nor with the intent charged in the petition. Further, that said order was passed by them under an honest belief that such publication was required of them in the due discharge of their official duties as such board, and believing that the same was in all respects true. Plaintiff's reply took issue with the new matter.

At the trial the jury found for the defendants "no cause for action." Judgment was entered upon this verdict, and this was affirmed by the circuit court.

It is insisted here that there are errors in the rejection of evidence offered by plaintiff, in the admission of evidence offered by defendants, and in the charge of the court to the jury.

*C. S. Mauk,* for plaintiff in error.

*B. J. Frotherton* and *H. A. Reeve,* for defendants in error.

SPEAR, J.; BURKET, C. J., DAVIS, SHAUCK, PRICE and CREW, JJ., concur.

1. A preliminary question. A question was made by defendants in error at the oral hearing with respect to the sufficiency of the petition in error in this court. This pleading avers the rendition of judgment by the circuit court in favor of defendants in error and against plaintiff in error, and adds: "A transcript of the docket and journal entries whereof, together with the original papers and bill of exceptions, are filed herewith. There is error in said record and proceedings in this, to-wit:" Then follow eight specific assignments of error applicable only to the proceedings of the court of common pleas. A ninth assignment is in these words: "And there are other errors prejudicial to the plaintiff in error which are manifest on the face of the record," and then a prayer that said judgment be reversed, and that plaintiff be restored to all things he has lost by reason thereof. Voluntary appearance to this petition in error was entered by defendants in error without objection, and none was made to it until the oral argument.

It is insisted that, inasmuch as there is no direct averment that

the circuit court affirmed the judgment of the common pleas, and no direct allegation of error in the judgment of the circuit court, there is no pleading here · for this court to act upon. Certainly such indifference to form and correctness in pleading is not to be commended. But, considering that the record brought up and re- ferred to includes what is lacking in the statement of the petition as to the rendition of judgment by the circuit court, and consider- ing the general allegation of other errors in the record, and further considering the lateness of the objection, and that no prejudice to defendants in error can possibly have resulted from the irregu- larity, we have concluded that it does not require at our hands a dismissal of the cause.

2. As to the testimony. Many objections are made by plaintiff to the action of the trial court, a few only of which do we find it necessary to notice. In considering the merits of the case it is important to understand that it is the preamble only which is charged as libelous; the resolution itself is not assailed. In regard to this preamble plaintiff complains that the trial court refused to allow evidence offered by him on the part of one Dr. Eger, a member of the board, to show that, at the time the resolution was being considered by the board, he (Eger) said to the board that the preamble was false; that he (witness) was with Dr. Mauk in those cases and he used proper care, and that if they passed the resolution with the preamble attached they would get into trouble. The evidence was clearly competent and unless the error was cured the ruling was certainly a prejudicial error. It is claimed that it was cured because the same witness, when on the stand afterward, was interrogated as to all the conversation which oc- curred at the time of the meeting of the board when the preamble and resolution were being considered, and testified fully, both in chief and in cross-examination, respecting the conversation which occurred then between himself and the other members of the board. That this cured the error is denied on the authority of *Reynolds* v. *Tucker,* 6 Ohio St., 516, and it is urged that the holding in that case rules the case at bar in favor of the plaintiff. We think it does not. In the case cited the party objecting, and whose ob- jection was sustained, subsequently offered to go into the inquiry

with the same witness, which was declined by the other party and the testimony was not given. In the present case the inquiry was fully pursued by both parties and the plaintiff had the benefit of the testimony. It is not necessary to overrule the case of *Reynolds* v. *Tucker,* but the principle should not be extended. This holding we believe to be in consonance with the universal practice throughout the state.

It is further insisted that the trial court erred in admitting expert testimony on the part of defendants to show that death might result to a woman in childbirth from blood poisoning by negligent treatment on the part of the physician who had shortly before been attending other patients affected by blood poison and other infectious diseases, there having been no testimony given tending to show that plaintiff had treated such cases of blood poison, etc., nor that he communicated such disease to his patients. This point would be well taken if the defense had been justification, for then the defendants, to maintain the issue, would have been required to introduce testimony to prove the truth of the libelous words. But as the defense was simply that defendants had reason to believe the charge true, and did so believe, it was not incumbent upon them to show its actual truth, but they were properly permitted to prove if they could that they believed the charge true, and that if that belief had been well grounded that the serious consequences charged would have been the natural result. Whether this would have been competent evidence at common law we need not inquire inasmuch as our statute, Section 5094, specifically provides that "in every case the defendant may prove any mitigating circumstances. to reduce the amount of damages." The evidence tended to show good faith and the absence of malice, and thus to mitigate damages, and was therefore competent without first making proof of the truth of the charge. Testimony having been given on the part of defendants, by Dr. Reamy, that a physician having due regard to the health and life of his patient should not attend and treat an obstetrical case while attending upon a case of diphtheria unless imperative necessity demanded it, another attendant not being obtainable; the plaintiff in rebuttal sought to show, by Dr. Barnhill, that a physician might have due regard to the health

and life of an obstetrical patient by treating her while attending a case of diphtheria by properly disinfecting himself, and that such practice is eminently proper and is considered good practice. The testimony was excluded. This testimony tended to rebut that given by Dr. Reamy, and its exclusion was error.

3. The charge. In the main the charge is a clear and correct statement of law as applied to the theory of the case adopted and followed by the learned trial judge. But we think that the theory was wrong and will endeavor to point out some of the errors appearing.

The preamble charges a degree of carelessness on the part of the physician referred to amounting almost to criminal negligence. To say the least, it was calculated to injure the physician in his profession by tending to prevent his obtaining employment, and thus to deprive him of the emoluments which pertain to his calling. No argument can be needed to show that the act charged as done by the physician, if believed by the community to be true, worked substantial harm. The preamble, therefore, was libelous per se. Folkard's Starkie on Slander, 68; Townsend on Slander, Sec. 182; 18 Am. & Eng. Ency. Law, 866, 942; Pratt v. Pioneer Press Co., 35 Minn., 251; Hayner v. Cowden, 27 Ohio St., 292. Under the general rule of the common law that one shall have a remedy for every injury, the plaintiff here should have a remedy for the injury done him unless there are other rules of law, or some controlling considerations of public policy, which take the case out of the rule. The contention is that the preamble was issued under the performance of a public duty, and hence was privileged. The American rule, as held in Smith v. Howard, 28 Ia., 51; Hoar v. Wood, 3 Metc., 193, and McLaughlin v. Cowley, 127 Mass., 316, is that, in order to be privileged, the statement must be pertinent and material to the matter in hand. To be pertinent and material it must tend to prove or disprove the point to be established, and have substantial importance or influence in producing the proper result. In other words, the statement must be necessary to a full presentation and in that sense essential to the accomplishment of the object sought. Now the result to be reached in the present instance was the order providing for the conduct

of physicians in the village. To reach this result, however imminent the duty of the board to pass and publish a proper resolution to correct the evil which it was assumed existed, it could not be at all important to charge negligence on the part of any physician. Not being essential, or even important, that the board should undertake to fix the blame on any particular person, it follows that the preamble was not a privileged communication, and that those who passed and published it assumed the responsibility as individuals, and could not shield themselves by merely showing that they acted as members of the board, and that the order itself was a proper one. Whether or not the occasion gives the privilege is a question of law for the court, for unless there is a privileged occasion, the publication of defamatory matter is legally malicious, it being a case of a wrongful act intentionally done without just cause or excuse; that is, in the absence of a justifiable occasion for the publication, malice is but an inference of law, and should not be left as a question of fact for the jury Folkard's Starkie, Sec. 674; _Bromage_ v. _Prosser_, 4 B. & C., 247. And the main legal question in the case, turning as it did upon a proper construction of the entire publication in connection with the pleadings, it was the duty of the trial court to construe the publication and give the correct rule to the jury. It follows that the burden assumed by the plaintiff under the pleadings was simply to show the publication by defendants (which in fact was not denied in the proof), and that the plaintiff was the physician referred to, and understood by the community to be such physician. On such showing he was entitled to recover at least such compensatory damages as were attributable to the publication. It was error, therefore, for the court to submit to the jury the question whether or not the preamble was libelous, and whether or not it was privileged.

Respecting damages, the court, after defining compensatory and exemplary damages, said to the jury: "To find exemplary or smart money damages you must find that all the defendants against whom you may find a verdict, if you do find a verdict, had actual malice as I have defined to you. That of course does not affect the question of compensatory damages but simply those that would

be found upon actual malice." If by this it was intended to instruct the jury that if they found that plaintiff was entitled to recover, they might find, if the proof justified it, actual malice on the part of some and hence award exemplary damages against them and compensatory damages only against the remainder, the expression is not clear. On the other hand, if it was intended, as we think it was, to instruct that in no event could compensatory damages be awarded against some and exemplary damages against others, then we think the instruction incorrect. Perhaps the question is not without difficulty, but it would appear practicable to allow a recovery of an amount against all as compensatory damages, and a further amount against some as exemplary damages, (and such verdict would be just if the evidence warranted it), and it would not seem impracticable to so shape the verdict as to bring about this result.

Further along the court said to the jury: "You may, depending upon how you find the facts, return a verdict if the plaintiff has made out his case, against one or part or all of them. in other words against whom you find plaintiff has made out his case, and your verdict would be as to the others, no cause of action; or if you find that the plaintiff has not made out his case, under the rules that I have given you, your duty would be to return a verdict of no cause of action to all defendants." This instruction was faulty because the rules before given the jury, or some of the essential ones, were faulty as hereinbefore shown. The plaintiff was entitled to a direct charge to the effect that if the plaintiff had, by a preponderance of the evidence, sustained his claim that he was the physician intended by the preamble, and that the preamble was published by defendants as charged, he was entitled to recover.

In the concluding paragraph the court said to the jury this: "Evidence has been allowed to go to you, gentlemen, touching the financial standing of certain of the defendants; that evidence goes to you, not for the purpose of affecting your verdict, but simply for the purpose of showing you the standing of the defendants in the community in which they live, that you may consider that fact, along with the other proofs in the case, as to what effect the

statements of any of these parties may have had upon the plaintiff." The phrase "not for the purpose of affecting your verdict" was at least unfortunate. If the evidence was not in any wise intended to affect the verdict it should not have been received. It was, however, competent for just what the court appears to have had in mind, viz.: As bearing upon the influence the defendants may have had in the community, and the importance which the people of the community would naturally attach to their utterances.

Upon the whole record we conclude that the plaintiff did not have a fair trial. The judgments of both courts will be reversed and the cause remanded for further proceedings according to law.

*Reversed.*