NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-830

HAVERHILL STEM LLC & another[1]

vs.

LLOYD JENNINGS & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After an unsuccessful interlocutory appeal from the denial of their special motion to dismiss under the "anti-SLAPP statute," see Haverhill Stem LLC v. Jennings, 99 Mass. App. Ct. 626, 630-635 (2021) (Haverhill Stem I), the defendants, Lloyd Jennings and Brad Brooks again appeal, this time challenging an order denying their renewed motion to dismiss the plaintiffs' complaint based upon the absolute litigation privilege.  We affirm.

Our review of a ruling on a motion to dismiss is de novo. See Bassichis v. Flores, 490 Mass. 143, 148 (2022).  In contrast to an appeal involving a special motion to dismiss under the anti-SLAPP statute, which anticipates review of an evidentiary

_____

[1] Caroline Pineau.
[2] Brad Brooks.

record, see G. L. c. 231, § 59H; Haverhill Stem I, supra at 627 n.3, we consider only the facts alleged within the four corners of the complaint.  See Bassichis, supra.  Accordingly, we recite so much of the facts alleged in the verified complaint that are relevant to the litigation privilege defense, accepting "as true all of the facts alleged . . . and [drawing] all reasonable inferences in the plaintiffs' favor."[3]  Id.

Seeking to operate a marijuana dispensary in the city of Haverhill (city), Caroline Pineau advocated for zoning changes to the downtown area and began applying for the appropriate licenses to operate an establishment in a building she leased from her father.[4]  Her next door neighbors, Lloyd Jennings and Brad Brooks, actively opposed the proposed use.[5]  When Pineau called Brooks in October 2018 to discuss her plans, he stated, "[W]ell, you better bet me and my partner are going to get our

---

[3] Several individuals, including Caroline Pineau and her former attorney, were deposed and several submitted affidavits in connection with the defendants' earlier special motion to dismiss.  See Haverhill Stem I, 99 Mass. App. Ct. at 627 n.3. The defendants' lengthy recitations and quotations from these materials in their briefs as well as their denials of the factual allegations of the complaint, particularly their "threats," are not before us at this point in the proceedings.
[4] In 2018 Pineau's father bought the building located at 124 Washington Street to assist his daughter with her business plans.  Pineau also owns a yoga studio nearby on Washington Street.
[5] Jennings and Brooks own the property located at 128-130 Washington Street and the restaurant located thereat called The Hungry Pig.  Pineau and her husband, Jennings, and Brooks all reside in Haverhill.

money back from the deck we built, which is $30,000, and make sure you go through the same hell with the city that we did."[6] To Pineau's suggestion that "they could be good neighbors," Brooks responded, "[N]o, we said whoever bought that building owes us $30,000 and we will fight them every step of the way." A series of meetings ensued in an attempt to settle their differences.

At a meeting requested by Brooks with Pineau and her husband held on November 3, 2018, Brooks and Jennings informed them they were seeking $30,000 "regardless of who bought the building" and that they "would fight whatever Pineau proposes for use of the building."

After this meeting, Brooks and Jennings publicly circulated their demand for money, informing members of the Haverhill downtown community that "the [p]laintiffs owed them $30,000." Several people asked Pineau "why she owes [the defendants] $30,000." Pineau had no debt obligation to Brooks or Jennings.

---

[6] In 2017, while the Victor Emmanuel Lodge (lodge) owned 124 Washington Street, Jennings and Brooks had plans to build a deck behind their property that extended fifteen feet over their property line on to the lodge's property. As a condition of building the proposed deck, Jennings and Brooks were required to build an identical deck behind 124 Washington Street at a cost of $30,000. See Haverhill Stem I, 99 Mass. App. Ct. at 628 ("As a result, in the defendants' view, 'the building,' . . . owed the defendants $30,000"). Neither Pineau nor her father had anything to do with these negotiations or the final settlement agreement between the lodge, the defendants, and the city.

3

After the city approved downtown zoning for marijuana establishments in January 2019, Jennings stated to several people around town, "[Pineau] doesn't know who she is dealing with"[7] and "she'll see how Haverhill works."

In early March 2019 Pineau approached Brooks requesting another meeting aimed at "[setting] aside their issues." Accompanied by her attorney, Pineau met with Brooks and Jennings on March 15. Jennings agreed to settle the matter if Pineau paid him "no less than $30,000," gave him sole use of the deck behind 124 Washington Street, see note 6, supra, and agreed not to conduct her cannabis business on the second and third floors of the building. Absent a financial resolution, Brooks and Jennings threatened to bring a "RICO"[8] lawsuit against Pineau. No agreement was reached.

During subsequent negotiations between Pineau's attorney on one side and Brooks and Jennings on the other, Brooks and Jennings increased their cash demand to $50,000 and then to $75,000. Although the parties went back and forth, they were

[7] The plaintiffs allege that Jennings's criminal history is well-known in the community.

[8] RICO is an acronym for the Federal Racketeer Influenced and Corrupt Organizations Act. See 18 U.S.C. § 1962(c) (1988). No RICO lawsuit was ever filed and the defendants do not challenge this court's conclusion that such litigation was not seriously contemplated in good faith as to give rise to a potential litigation privilege. See Haverhill Stem I, 99 Mass. App. Ct. at 636 n.15.

unable to reach an agreement. Brooks and Jennings rejected Pineau's "final" settlement offer on April 3, 2019.

Shortly thereafter, Jennings restarted negotiations, and offered to settle the matter for a $75,000 payment. When Pineau's husband met with Jennings to discuss the offer on April 10, Jennings stated that he had been "insulted by the whole process" and that he "hasn't been shown the respect he deserves." He informed Pineau's husband that while he was still willing to "talk about a deal," that might change because the defendants were meeting with their Boston lawyers the next day "to pursue a RICO lawsuit." Jennings further stated if the defendants were not able to use the deck, "the price would be much higher." Pineau's husband responded that "it was unlikely that they would be able to negotiate about the deck because of the regulations of the Cannabis Control Commission.

Jennings became very angry at that point, stated that he did not care for the Pineaus or their approach, and alleged that they had lied to him. He further stated that "he was prepared to try to destroy the Pineaus and their business before it got off the ground . . . [and that] the Pineaus don't have the money to fight him and he has already won and was prepared to take everything from the [Pineaus], including their house." Throughout this meeting, Jennings reiterated that the Pineaus "didn't know who [they] were messing with when [they] started

5

this."  On May 30, 2019, the defendants and a third party filed an action in the Land Court seeking to invalidate the recreational marijuana zoning bylaw.  This action followed in short order.[9]

Discussion.  Following a Superior Court order denying the defendants' renewed motion to dismiss, this interlocutory appeal is properly here under the doctrine of present execution.[10]  See Haverhill Stem I, 99 Mass. App. Ct. at 635; Marston v. Orlando, 95 Mass. App. Ct. 526, 535 n.22 (2019).  The sole issue for determination is whether the litigation privilege, as recently clarified by the Supreme Judicial Court in Bassichis, 490 Mass. at 149-160, overruled Haverhill Stem I, supra at 635-637, and barred this action.  In Haverhill Stem I, we decided the litigation privilege defense adversely to the defendants.  Given its importance for present purposes, we set out our analysis in detail.

---

[9] The complaint contained six counts; at this time, four claims remain pending against the defendants:  alleged violations of the Massachusetts Civil Rights Act, alleged violations of G. L. c. 93A, § 11, civil conspiracy, and defamation.

[10] The defendants first raised the absolute litigation defense in their motion for reconsideration of the order denying their special motion to dismiss.  While the defendants' first interlocutory appeal was pending in this court, a Superior Court judge denied the motion.  In our discretion, in Haverhill Stem I, we chose to reach the defense "in the interest of efficiency."  Haverhill Stem I, 99 Mass. App. Ct. at 635-636.  After Bassichis was handed down in July 2022, another Superior Court judge denied the defendants' renewed motion to dismiss based on that case.

Therein, we first concluded that while some of the plaintiffs' allegations were based on the defendants' petitioning activities, "other significant allegations [were] not," and thus the plaintiffs' claims "survive an anti-SLAPP motion." Haverhill Stem I, 99 Mass. App. Ct. at 631-632. In concluding that the plaintiffs' claims were not based solely on petitioning activity, we reasoned:

> "[S]ome of the defendants' statements to the Pineaus cannot reasonably be viewed as relating to the defendants' petitioning activities. . . . [T]he defendants' focus was to obtain money from Pineau that the defendants knew Pineau did not owe to them. It was in this context -- seeking the $30,000 -- that Jennings made the statements that the Pineaus did not have the money to fight him, that he was preparing to file a RICO claim, and that he 'was prepared to take everything from the Pineaus, including their house.' Those statements were not reasonably related to the defendants' opposition to Pineau's marijuana dispensary. The defendants' opposition to the dispensary through the Land Court litigation could not have led to the defendants obtaining money from the Pineaus through a lawsuit, let alone to causing the Pineaus financial ruin. Rather, the statements by Jennings, if proved, were part of an extended pattern of threats, made in an effort to coerce payment" (footnote omitted). Id. at 633.

Rejecting the defendants' argument that they were merely opposing Pineau's proposed business and negotiating a price to forego their opposition, conduct we found unobjectionable, we concluded that "the complaint describes a concerted and extended effort to coerce Pineau to pay, 'or else' -- complete with thinly veiled threats . . . [and] thus adequately describes extortion -- coercion by improper means that is designed to reap

7

an economic reward.  Such actions, in the business context, can be actionable under c. 93A."  Id. at 634.  We also rejected the defendants' similar argument that "all Pineau has alleged are hardball negotiating tactics . . . [that are] accepted business practices that cannot be actionable."  Id. at 634-635.  We reasoned that while "rough and tumble" negotiations are permissible, "the repeated threats alleged here, designed to coerce payment -- including threats that portended economic ruin without basis -- fell outside any acceptable boundary" separating legitimate petitioning activity from unprotected conduct.  Id. at 635.

In addressing the litigation defense, we acknowledged the broad scope of the privilege, which "generally precludes civil liability based on 'statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding,' as well as statements 'preliminary to litigation' that relate to the contemplated proceeding."  Haverhill Stem I, 99 Mass. App. Ct. at 636, quoting Gillette Co. v. Provost, 91 Mass. App. Ct. 133, 140 (2017).  Applying a "fact-specific analysis" as to whether the defendants' out-of-court statements sufficiently related to litigation, we concluded that "much of the defendants' conduct alleged here cannot properly be considered as in connection with litigation" (citation

8

omitted).[11]  Haverhill Stem I, supra at 636.  See Bassichis, 490 Mass. at 153-154.

On appeal the defendants argue that two main aspects of Haverhill Stem I run afoul of Bassichis and prior precedent and cannot stand.  First, they contend that "so long as [their] act[s] [and statements had] some relation to the proceeding," the litigation privilege protects participants against all civil liability, and that no exceptions to the privilege exist for statements and conduct amounting to "extortion" or where monetary damages are unavailable for the pending or contemplated litigation.  See Haverhill Stem I, 99 Mass. App. Ct. at 636-637.  They further argue that the Supreme Judicial Court's extension of the privilege to conduct in Bassichis necessarily overruled this court's application of the distinction between "statements" and "conduct" in Haverhill Stem I, supra at 637.

To the extent that Jennings and Brooks claim their alleged statements and conduct fall within the absolute litigation

---

[11] In Haverhill Stem I, 99 Mass. App. Ct. at 630 n.7, we described the litigation "contemplated" by the defendants and eventually brought as two Land Court cases:  one challenging the validity of the city's recreational marijuana zoning bylaw and the other challenging the city council's issuance of a special permit.  The first Land Court action ended in a judgment adverse to the defendants, a result affirmed by this court.  See Brooks v. Haverhill, 100 Mass. App. Ct. 1105 (2021).  The defendants voluntarily dismissed the second Land Court action.  See Haverhill Stem I, supra.

9

privilege, they were not attorneys zealously representing clients during the course of a judicial proceeding, but rather individuals engaged in prelitigation, private settlement negotiations.  Given the different context in which the case arose, the principal public policies underlying the Bassichis decision, and the precise issue decided, we are not persuaded that the Bassichis case overrules Haverhill Stem I or controls the case at bar.[12]

In any event, regardless of whether Bassichis may have cast into doubt some of the reasoning in Haverhill Stem I, a point we need not decide, the Supreme Judicial Court did not purport to change the requirement that the communications and conduct have "some relation to the proceeding."  Bassichis, 490 Mass. at 150, quoting Restatement (Second) of Torts § 586 (1977).  Accordingly, our ultimate conclusion in Haverhill Stem I -- that "much of the defendants' conduct alleged here cannot properly be

---

[12] In Bassichis, the court held that the litigation privilege applied not only to alleged misrepresentations made to a judge by an attorney, but also to the attorney's "actions" taken during the course of litigation to obtain a favorable result for his client.  See Bassichis, 490 Mass. at 149, 157-158.  In reaching its decision to immunize the defendant attorney from liability, the court found "persuasive" two reasons for extending the privilege to fraudulent misrepresentations by attorneys:  the encouragement of "robust representation of clients"; and the protection of the "overwhelming number of innocent attorneys from unjust claims" and "retaliatory litigation" (citation omitted).  Id. at 154-155.  The policies furthered by the holding of Bassichis have no application here.

10

considered as in connection with litigation" -- remains intact. Haverhill Stem I, 99 Mass. App. Ct. at 636. In short, just as the defendants did not have "free rein to threaten and coerce" because they were involved in legitimate petitioning activity, id. at 635, they were not entitled to use the shield of the litigation privilege to make threats or false statements that were unrelated to the subject of the contemplated city council and Land Court proceedings. See Bassichis, 490 Mass. at 150. See also Hoar v. Wood, 3 Met. 193, 197 (1841) (litigation privilege is unavailable where party or counsel uses opportunity "to gratify private malice by uttering slanderous expressions . . . which have no relation to the cause or subject matter of the inquiry"); Robert L. Sullivan, D.D.S., P.C. v. Birmingham, 11 Mass. App. Ct. 359, 362 (1981) (doctrine of absolute "privilege . . . cannot be exploited as an opportunity to defame with immunity").

We are not persuaded by the defendants' continued insistence that all their alleged statements and conduct had "some relationship to the [contemplated] proceeding[s]." To the extent that the defendants urge this court to apply the relevancy test appearing in comment c of the Restatement (Second) of Torts § 587, no Massachusetts court has fully

embraced the comment or its language.[13]  See Correllas v.

Viveiros, 410 Mass. 314, 319-321 (1991) ("[s]tatements made in

the course of a judicial proceeding which pertain to that

proceeding" as well as "statements made by a witness or party

during trial, if 'pertinent to the matter in hearing'" are

absolutely privileged [citation omitted]); Sriberg v. Raymond,

370 Mass. 105, 108 (1976) ("statements by a party . . . in the

institution of . . . a judicial proceeding are absolutely

privileged provided such statements relate to that proceeding");

McLaughlin v. Cowley, 127 Mass. 316, 319 (1877) (English

privilege rule was adopted by American courts "with the

qualification, as to parties, counsel, and witnesses, that their

statements made in the course of an action must be pertinent and

material to the case").  See also Kobrin v. Gastfriend, 443

Mass. 327, 345-346 (2005); Gillette Co., 91 Mass. App. Ct. at

---

[13] As highlighted by the defendants, comment c to § 587 provides that, "[i]t is not necessary that the defamatory matter be relevant or material to any issue before the court.  It is enough that it have some reference to the subject of the inquiry. . . .  [The party] is not answerable for defamatory matter volunteered or included by way of surplusage in his pleadings if it has any bearing upon the subject matter of the litigation.  The fact that defamatory publication is an unwarranted inference from the alleged or existing facts is not enough to deprive the party of his privilege, if the inference itself has some bearing upon the litigation."  The defendants also cite to the similar relationship test set forth in Restatement (Second) of Torts § 586, comment c.  See Bassichis, 490 Mass. at 150.  However, § 586 comment c applies only to "statements made by an attorney while performing his function as such" and is plainly inapplicable in this case.

12

140 and cases cited; <u>Dolan</u> v. <u>Von Zweck</u>, 19 Mass. App. Ct. 1032, 1033 (1985).

It is well-established, however, that "[t]he words 'pertinent to the proceedings' are not to be construed narrowly." <u>Robert L. Sullivan, D.D.S., P.C.</u>, 11 Mass. App. Ct. at 362, quoting <u>Aborn</u> v. <u>Lipson</u>, 357 Mass. 71, 73 (1970). See <u>Blanchette</u> v. <u>Cataldo</u>, 734 F.2d 869, 877-878 (1st Cir. 1984) (applying Massachusetts law); <u>Dear</u> v. <u>Devaney</u>, 83 Mass. App. Ct. 285, 291 n.5 (2013). Even under the broadest construction, many of the defendants' alleged statements, including those about Pineau's $30,000 debt that the defendants knew she did not owe, have no "reasonable relation or reference to the subject of inquiry" and could not "possibly be pertinent," <u>Aborn</u>, <u>supra</u>, to the contemplated proceedings, and thus fell outside of the protection of the privilege.[14]

<u>Order denying renewed motion to dismiss affirmed</u>.

By the Court (Sullivan, Desmond & Singh, JJ.[15]),

*Joseph F. Stanton*

Clerk

Entered: May 19, 2023.

---

[14] The plaintiffs' request for an award of appellate attorney's fees and costs is denied.
[15] The panelists are listed in order of seniority.