ROGER C. MORRIS, administrator,[1] vs. MASSACHUSETTS
MARITIME ACADEMY & others[2]
(and a companion case[3]).

Suffolk. October 4, 1990. - January 17, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Massachusetts Tort Claims Act. Governmental Immunity. Admiralty.
Vessel, Seaman. Commonwealth, Claim against. Words, "Seaman,"
"Employee."*

Absent an explicit Federal statutory provision to the contrary, the Com-
monwealth was entitled to assert sovereign immunity against admiralty
claims brought in its own courts in circumstances where the Eleventh
Amendment to the United States Constitution would have barred suit
in the Federal courts. [181-186]

The waiver of the Commonwealth's sovereign immunity expressed in § 2 of
the Massachusetts Tort Claims Act, G. L. c. 258, encompasses admi-
ralty claims. [186-187]

The $100,000 limitation on the Commonwealth's liability under § 2 of the
Massachusetts Tort Claims Act is permissible as a partial waiver of the
Commonwealth's sovereign immunity, and does not conflict with any
rule of Federal admiralty law that a State court is required to apply to
maritime cases. [187-189]

The "saving to suitors" clause, 28 U.S.C. § 1333 (1988), provided jurisdic-
tion to the Superior Court to adjudicate in personam admiralty claims
as to which the Commonwealth had waived its sovereign immunity
under § 2 of the Massachusetts Tort Claims Act, G. L. c. 258. [189-
190]

In civil actions, the plaintiffs' complaints, considered together with the rea-
sonable inferences therefrom in the light most favorable to the plain-
tiffs, alleged sufficient facts to present a jury question whether two ca-
dets serving on a training vessel of the Massachusetts Maritime
Academy were "seamen" or "employees" for purposes of the Jones Act,
46 U.S.C. § 688 (1982 & Supp. III 1985). [190-194]

---

[1] Of the estate of Rodney C. Morris.

[2] Board of trustees for the Massachusetts Maritime Academy, Board of
Regents of Higher Education, and the Commonwealth.

[3] Stephen A. Bianco vs. Massachusetts Maritime Academy & others.

CIVIL ACTIONS commenced in the Superior Court Department on December 20, 1983, and February 1, 1984, respectively.

Motions to dismiss were heard by *Barbara J. Rouse*, J., and the cases were reported by her to the Appeals Court. The Supreme Judicial Court transferred the case on its own initiative.

*Jon S. Hartmere*, Assistant Attorney General (*Thomas F. Murphy, Jr.*, Special Assistant Attorney General, with him) for the defendants.

*Steven L. Hoffman* (*Lisa L. Locke* with him) for the plaintiffs.

ABRAMS J. On December 22, 1981, a fire aboard the Bay State, a training vessel used by the Massachusetts Maritime Academy (academy), killed Cadet Rodney C. Morris and severely injured Cadet Stephen A. Bianco. Bianco and Morris's estate brought actions in the Superior Court against the Academy, its board of trustees, the Board of Regents of Higher Education, and the Commonwealth.[4] They allege (1) violation of the Jones Act, 46 U.S.C. § 688 (1982 & Supp. III 1985); (2) negligence, gross negligence and unseaworthiness under general admiralty law, and (3) negligence and wrongful death as to Morris under State law, including G. L. c. 229 (1988 ed.). The defendants moved to dismiss the complaints for lack of subject matter jurisdiction and failure to state a claim. They contended that the plaintiffs' claims are barred by sovereign immunity, that State courts lack jurisdiction over the admiralty claims under the saving to suitors clause, 28 U.S.C. § 1333 (1988), and that State courts lack jurisdiction over the Jones Act claims because the cadets are neither "seamen" nor "employees" under the Jones Act. The Superior Court judge denied the motions to dismiss and re-

[4]Earlier complaints filed in the United States District Court for the District of Massachusetts by the plaintiffs against the United States, which owns the Bay State, and these defendants were dismissed as to the United States for lack of subject matter jurisdiction, and were dismissed as to the Academy, the board of trustees, the Board of Regents, and the Commonwealth to allow the plaintiffs to pursue their claims in State court.

served and reported her decision to the Appeals Court pursuant to G. L. c. 231, § 111 (1988 ed.), and Mass. R. Civ. P. 64, 365 Mass. 831 (1974). We transferred the case on our own motion. We affirm.

1. *Sovereign immunity.* The defendants contend that admiralty claims against the Commonwealth or its agencies are barred by sovereign immunity. The plaintiffs claim that the defendants may not assert sovereign immunity against admiralty claims in State court. They further argue that, even if sovereign immunity may be asserted, the Commonwealth has waived its immunity under the Massachusetts Tort Claims Act, G. L. c. 258 (1988 ed.). The plaintiffs also contend that the $100,000 cap on recovery imposed by the Act cannot be applied to limit their Federal Jones Act or maritime remedies. Because the questions relating to waiver and the Massachusetts Tort Claims Act depend, in part, on the issue of sovereign immunity, we discuss each issue in turn.

a. *State sovereign immunity against admiralty claims.* The saving to suitors clause, 28 U.S.C. § 1333, provides State courts with concurrent jurisdiction over certain admiralty claims. (See *infra.*) In *Offshore Logistics, Inc.* v. *Tallentire*, 477 U.S. 207, 222-223 (1986), the United States Supreme Court ruled that the extent to which State courts may apply State law to remedy maritime injuries is limited by a so-called "reverse-*Erie* doctrine." Thus, "a state, 'having concurrent jurisdiction, is free to adopt such remedies, and to attach to them such incidents, as it sees fit' so long as it does not attempt to . . . make changes in the 'substantive maritime law.' " *Id.* at 222, quoting *Madruga* v. *Superior Court*, 346 U.S. 556, 560-561 (1954). As the United States Supreme Court explained in *Southern Pac. Co.* v. *Jensen*, 244 U.S. 205, 216 (1917), State law may not be applied in maritime cases if "it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations."

The plaintiffs contend that the Commonwealth may not claim sovereign immunity in this case because application of immunity would defeat the uniformity of admiralty law and would deprive the plaintiffs of a Federal right of recovery to which they are otherwise entitled. They argue that the case is controlled by *Workman* v. *New York City*, 179 U.S. 552 (1900), in which the Supreme Court refused in a maritime case to apply a local law conferring immunity on municipalities because of its negative impact on uniformity and the Federal admiralty right of recovery.

*Workman*, however, was directed to a local law conferring immunity on *municipalities*, not on the State itself. The United States Supreme Court distinguished the New York law from sovereign immunity laws that operate as a jurisdictional bar. See *id*. at 566. Indeed, later Supreme Court decisions hold that States *are* entitled to sovereign immunity against admiralty claims, at least in Federal court. See *Ex parte State of N.Y.*, 256 U.S. 490, 499-500 (1921) (Supreme Court rejected the argument that the sovereign immunity claim should be analyzed for its consistency with admiralty law as the municipal immunity law was in *Workman*). See *id*. at 499-500. The plaintiffs at bar nevertheless contend that *State of N.Y.* is inapposite because the holding was based on the Eleventh Amendment[5] to the United States Constitution, which they argue provides immunity for States only in Federal courts, not in State courts.

It is true that the language of the Eleventh Amendment is directed only to the "judicial power of the United States" rather than to the judicial power of the States. However, the Supreme Court's interpretation of the constitutional principles underlying the amendment is not limited by the language. For example, although the amendment addresses only suits between States and citizens of another State or foreign

---

[5]The Eleventh Amendment to the United States Constitution provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign state."

states, the Supreme Court construes the principle of sovereign immunity to extend nevertheless to suits between a State and one of its own citizens. See *Hans* v. *Louisiana*, 134 U.S. 1 (1890). See also *Ex parte State of N.Y.*, *supra* (Eleventh Amendment bars suits in admiralty against a State even though the language of the amendment only mentions suits in law or equity).

The Supreme Court's interpretation of the amendment is derived from its reading of the history of the amendment's passage. According to the Supreme Court, the Eleventh Amendment was intended to overrule the decision in *Chisholm* v. *Georgia*, 2 U.S. (2 Dall.) 419 (1793), in which art. III, § 2, of the United States Constitution was interpreted to permit Federal court suits brought against nonconsenting States by citizens of another State. The popular outrage at the *Chisholm* decision and the quick response in the form of the Eleventh Amendment indicated to the Supreme Court that the Constitution was adopted with the implicit assumption that States were to enjoy sovereign immunity in Federal courts. See *Hans*, *supra* at 11.[6]

More recently, the Supreme Court has held that this immunity may be abrogated by an act of Congress. See *Pennsylvania* v. *Union Gas Co.*, 491 U.S. 1 (1989) (congressional abrogation of State immunity pursuant to commerce clause power); *Fitzpatrick* v. *Bitzer*, 427 U.S. 445 (1976) (congressional abrogation of State immunity pursuant to enforcement power of § 5 of Fourteenth Amendment to the United States Constitution). However, the Supreme Court has stressed that, "Congress may abrogate the States' constitutionally secured immunity from suit in Federal court only by making its intention unmistakably clear in the language of the statute." *Atascadero State Hosp.* v. *Scanlon*, 473 U.S. 234, 242 (1985). The Jones Act, according to the Supreme Court, does not contain sufficiently explicit language to constitute

---

[6]Justice Brennan actively and forcefully argued against this historical interpretation. See *Atascadero State Hosp.* v. *Scanlon*, 473 U.S. 234, 259 (1985) (Brennan, J., dissenting). Justice Brennan could not persuade a majority of the Supreme Court to overrule *Hans.*

such an abrogation. See *Welch* v. *Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 474-476 (1987).

Although the Supreme Court never has addressed the question whether States may claim immunity in their own courts when the Eleventh Amendment bars suit in Federal court,[7] we think that, absent congressional command to the contrary, they may. The *Hans* line of cases indicates that the Constitution was ratified with the implicit assumption that States would retain their sovereign immunity. The only logical interpretation of this implicit constitutional principle is that it must apply regardless of the court in which the State is being sued. Any conclusion to the contrary would decimate the force of the Eleventh Amendment and demote it into nothing more than a choice of forum clause: either the State must consent to be sued in Federal court or it will be unwillingly subjected to process in its own courts. We think the Supreme Court's Eleventh Amendment jurisprudence demonstrates a greater respect for the principle of State sovereign immunity.

Although concerns for Federal-State comity — the unseemly notion of one sovereign being hauled into the courts of another — arise in many of the Eleventh Amendment cases, those federalism concerns are no less present in this type of case. Although here it is not a question of a State being hauled into the *courts* of another sovereign, it is a question of a State being hauled into its own courts by the *laws* of another sovereign. Moreover, those laws are alleged to require the payment of retrospective damage awards out of a State's coffers. If there is any area of State sovereignty which the Supreme Court is particularly hesitant to invade, it is State citizens' settled decisions about State budgetary allocations. See *Edelman* v. *Jordan*, 415 U.S. 651 (1974) (Eleventh Amendment bars suits against State officers seek-

---

[7]In *Employees of the Dep't of Pub. Health & Welfare of Mo.* v. *Department of Pub. Health & Welfare of Mo.*, 411 U.S. 279, 297-298 (1973) (Marshall, J., concurring), Justice Marshall expressed his view that State courts are obliged to hear the suit in these circumstances. The Supreme Court noted the issue, but did not address it. See *id.* at 287.

ing retroactive as opposed to prospective monetary compensation which ultimately would be paid by the State). "It is one thing to tell [a State official] that he must comply with the federal standards for the future . . . . It is quite another thing to order [the official] to use state funds to make reparation for the past. The latter would appear to us to fall afoul of the Eleventh Amendment if that basic constitutional provision is to be conceived of as having any present force." *Id.* at 665, quoting *Rothstein* v. *Wyman,* 467 F.2d 226, 236-237 (2d Cir. 1972), cert. denied, 411 U.S. 921 (1973). If the State is to retain any sort of control over settled budgetary decisions, the Eleventh Amendment must do more than merely direct plaintiffs to a different tribunal in order to sue the State under Federal law.

Although it may be clear that the supremacy clause gives Congress the power to abrogate State court immunity in its own as well as in Federal courts, cf. *Garcia* v. *San Antonio Metropolitan Transit Auth.,* 469 U.S. 528 (1985), we think that the Supreme Court's understanding of the principles underlying the Eleventh Amendment would require Congress to use equally explicit language in both circumstances. Because the Supreme Court already has determined that the Jones Act does not abrogate State immunity in Federal courts, see *Welch, supra,* we think it cannot be interpreted as abrogating State court immunity.

Decisions from other State courts, albeit before Congress's power to overcome a State's sovereign immunity was clear, support our view. See *Weppler* v. *School Bd. of Dade County,* 311 So. 2d 409 (Fla. App. 1975); *Commissioners of the Port of New Orleans* v. *Splendour Shipping & Enters. Co.,* 255 So. 2d 869 (La. Ct. App. 1971), rev'd on other grounds, 273 So. 2d 19 (La. 1973); *Maloney* v. *State of N.Y.,* 3 N.Y.2d 356 (1957); *Mossman* v. *Donahey,* 46 Ohio St. 2d 1 (1976); *Lyons* v. *Texas A & M Univ.,* 545 S.W.2d 56 (Tex. Ct. Civ. App. 1976); *Gross* v. *Washington State Ferries,* 59 Wash. 2d 241 (1961). But see *Clover Bottom Hosp. & School* v. *Townsend,* 513 S.W.2d 505 (Tenn. 1974) (State may not claim sovereign immunity in State court

against Fair Labor Standards Act claim where suit barred by Eleventh Amendment in Federal court). We therefore hold that the Commonwealth is entitled to immunity from this admiralty law action in State as well as Federal court.

b. *Waiver of immunity under the Massachusetts Tort Claims Act.* Having decided that the Commonwealth is entitled to claim immunity in State court from admiralty claims, we must now decide whether the Commonwealth has waived that immunity. The Massachusetts Tort Claims Act, G. L. c. 258, § 2 (1988 ed.), provides in part:

> "Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances, except that public employers shall not be liable . . . for punitive damages or for any amount in excess of one hundred thousand dollars."

Although this language does not specifically mention maritime claims, in all other respects it seems to cover these plaintiffs' complaints. They allege personal injury and death caused by the defendants' negligent, or wrongful act or omission. The Legislature has explicitly commanded that the Massachusetts Tort Claims Act is to be liberally construed. See St. 1978, c. 512, § 18. The only exceptions to the waiver of immunity contained within the act are set forth in § 10 of c. 258. Section 10 does not mention admiralty claims as an exception. Because § 2 on its face covers this claim, we cannot, consistent with our obligation to construe the act liberally, accept the defendants' argument that the Legislature was required to make specific mention of admiralty claims in order to bring them within the statute's ambit.

Nor do we agree that application of the act to these claims impermissibly "enlarge[s] governmental liability beyond the remedies already established under the common and statu-

tory law," or creates a new cause of action. *Gallant* v. *Worcester*, 383 Mass. 707, 714 (1981). The plaintiffs' causes of action are well-known under the common and statutory law. General Laws c. 258 merely applies them to new defendants — the Commonwealth and its agencies — "to the same extent as a private individual under like circumstances." G. L. c. 258, § 2.

We hold that the Commonwealth has waived its immunity to admiralty claims under the Massachusetts Tort Claims Act, G. L. c. 258, § 2.[8] See *Mifsud* v. *Palisades Geophysical Inst. Inc.*, 484 F. Supp. 159, 162 (S.D. Tex. 1980) (Texas Tort Claims Act encompasses admiralty claims for negligence because the act is to be liberally construed and admiralty claims are not specifically excluded).

c. *The limitation of liability.* The plaintiffs argue that their admiralty recovery cannot be limited by the $100,000 liability cap contained in G. L. c. 258, § 2, because neither the Jones Act nor general admiralty law imposes any limitation on damages. They contend that the $100,000 limitation is a State substantive law that conflicts with admiralty law, which a State court is forbidden by the "reverse-*Erie* doctrine" to apply to maritime claims. See discussion, *supra*; *Offshore Logistics, Inc.* v. *Tallentire*, 477 U.S. 207, 221 (1986).

The plaintiffs' argument, however, divorces the liability limitation from the jurisdictional context in which it arises. The limitation is contained in the same sentence in which sovereign immunity is waived. See G. L. c. 258, § 2. It is clear, therefore, that the Legislature intended to waive immunity only up to the $100,000 limit. The cap is one term of

---

[8]The plaintiffs urge us to hold that the Commonwealth is not immune under common law principles rather than under the Massachusetts Tort Claims Act. See *Lane* v. *Commonwealth*, 401 Mass. 549, 551 (1988) ("the enactment of G. L. c. 258 did not bar the development and application of common law principles governing the liability of public employers in areas to which G. L. c. 258 does not apply"). However, because we hold that G. L. c. 258 does apply in this case, there is no need to address the common law question.

the waiver. Because of our holding, *supra*, that, absent consent, the Commonwealth would be entitled to complete immunity, it follows that the Commonwealth may partially waive its immunity. The liability limitation constitutes such a partial waiver. It is incorrect, therefore, to begin with a presumption of unlimited liability and argue that the $100,000 cap impermissibly reduces the plaintiffs' recovery. Rather, our determination is that the Commonwealth is entitled to complete immunity but has consented to be subjected to potential liability up to $100,000.[9]

This interpretation is supported by precedent. The Supreme Court has remarked that "[t]he history of sovereign immunity and the practical necessity of unfettered freedom for government from crippling interferences require a restriction of suability to the terms of the consent, as to persons, courts and procedures." *Great N. Life Ins. Co.* v. *Read*, 322 U.S. 47, 53-54 (1944). See *United States* v. *Sherwood*, 312 U.S. 584, 587 (1941). Other courts have held that any limitations on a State's waiver of immunity in admiralty cases are effective. See, e.g., *Kamani* v. *Port of Houston Auth.*, 702 F.2d 612 (5th Cir. 1983) (notice requirement contained in the Texas Tort Claims Act is a limitation on the State's waiver of immunity and applies to maritime claims); *Trinity River Auth.* v. *Williams*, 689 S.W.2d 883 (Tex. 1985) ($100,000 limitation on liability in Texas Tort Claims Act limits claimant's maritime recovery); *Gross* v. *Washington State Ferries*, 59 Wash. 2d 241 (1961) (notice provision, as well as all other limits contained in State law waiving immunity, applies to general admiralty and Jones Act claims). The

---

[9]This understanding of the nature of the cap as a condition attached to the defendants' waiver of immunity also answers the plaintiffs' attempts to analogize it to State procedural laws that have been struck down when applied to defeat civil rights claims under 42 U.S.C. § 1983 (1982). See, e.g., *Felder* v. *Casey*, 487 U.S. 131 (1988) (State notice of claim provision preempted in § 1983 action). The cap does not defeat a right that the plaintiffs otherwise would enjoy in Federal court; it merely defines the limit of the Commonwealth's waiver of immunity, without which the plaintiffs would be unable to recover at all.

plaintiffs are therefore bound by the $100,000 limitation on recovery contained in G. L. c. 258, § 2.[10]

2. *The saving to suitors clause.* The Commonwealth contends that the Superior Court does not have jurisdiction over the general admiralty law claims under the saving to suitors clause, 28 U.S.C. § 1333. That statute provides: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." It has become clear that this provision provides concurrent jurisdiction to State courts over all in personam admiralty claims. See *Madruga* v. *Superior Court*, 346 U.S. 556 (1954); *Keough* v. *Cefalo*, 330 Mass. 57, 60 (1953).

The defendants rely on a Nineteenth Century Supreme Court case which states that the clause "only saves to suitors 'the right of a common-law remedy, where the common-law is competent to give it.' It is not a remedy in the common-law courts which is saved, but a common-law remedy." *The Moses Taylor*, 71 U.S. (4 Wall.) 411, 431 (1866). From this language, the defendants draw the conclusion that because "[a]t common-law, the sovereign Commonwealth of Massachusetts could not be sued in its own state courts," the clause does not grant jurisdiction to hear these claims today.

However, it is now clear that a wide range of remedies may be pursued under the concurrent jurisdiction. See *Red Cross Line* v. *Atlantic Fruit Co.*, 264 U.S. 109 (1924); *Steamboat Co.* v. *Chase*, 83 U.S. (16 Wall.) 522, 533-534 (1872) (rejecting the contention that the clause encompasses only causes of action known to the common law at the time of the passage of the Judiciary Act of 1789). Moreover, even if the defendants were correct in contending that only those remedies available at the common law may be heard pursuant to the saving to suitors clause, the Superior Court would

[10]The plaintiffs seek punitive damages. Although neither party raises the issue, we note that G. L. c. 258, § 2, not only limits the Commonwealth's liability to $100,000, but also specifically excludes recovery for punitive damages.

still have jurisdiction. Common law courts had jurisdiction to hear suits against the State when the State consented. Under the Massachusetts Tort Claims Act the defendants have consented to suit. Therefore, the action is of a kind familiar at common law. Thus, we conclude that the Superior Court has jurisdiction over the admiralty law claims under the saving to suitors clause.

3. *Jones Act claims.* The defendant contends that the plaintiffs' claims under the Jones Act should be dismissed because the cadets were neither "seamen" nor "employees" of the Academy.

On a motion to dismiss, see Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), "the plaintiffs need only surmount a minimal hurdle to survive a motion to dismiss for failure to state a claim." See *Bell* v. *Mazza*, 394 Mass. 176, 184 (1985). "Thus we review the complaint to determine if, viewing its allegations and inferences broadly and in the plaintiff[s'] favor, 'it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim' entitling [them] to relief." *Hobson* v. *McLean Hosp. Corp.*, 402 Mass. 413, 415 (1988), quoting *Nader* v. *Citron*, 372 Mass. 96, 98 (1977). Reviewing the complaints on that standard, we conclude that the judge correctly determined that the plaintiffs pleaded sufficient facts to withstand motions to dismiss.

The Jones Act[11] creates a statutory right of recovery for negligence which results in injury to a seaman in the course of his employment. Courts are to construe the legislation lib-

---

[11]The Jones Act states in relevant part: "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located." 46 U.S.C. § 688.

erally to protect injured workers. See *Cosmopolitan Shipping Co.* v. *McAllister*, 337 U.S. 783, 790 (1949); *Offshore Co.* v. *Robison*, 266 F.2d 769 (5th Cir. 1959); 2 M. Norris, Law of Seamen § 30:6 (4th ed. 1985). Under the express terms of the act, a plaintiff can bring suit only if he is a "seaman."

In their brief, the defendants concede that generally the question of "seaman" status is one of fact to be decided by the jury. "Attempts to fix unvarying meanings [having] a firm legal significance to terms such as 'seaman' . . . must come to grief on the facts. These terms have such a wide range of meaning, under the Jones Act as interpreted by the courts, that, except in rare cases, only a jury or trier of facts can determine their application in the circumstances of a particular case. Even when the facts are largely undisputed, the question at issue is not solely a question of law when, because of conflicting inferences that may lead to different conclusions among reasonable [people], a trial judge cannot state an unvarying rule of law that fits the facts." (Footnotes omitted.) *Offshore Co.* v. *Robison*, 266 F.2d 769, 779-780 (5th Cir. 1959). See *Senko* v. *LaCrosse Dredging Corp.*, 352 U.S. 370 (1957). Other courts have found it appropriate on occasion to decide this issue on summary judgment, but only where there is no reasonable evidentiary basis to support a jury finding that the plaintiff is a seaman. See *Barrett* v. *Chevron U.S.A., Inc.*, 781 F.2d 1067, 1074 (5th Cir. 1986).[12]

---

[12]The defendants cite two cases in support of their contention that dismissal or summary judgment on this issue would be appropriate. The circumstances of those cases differ significantly, however, from the case at bar. In both *Waguespack* v. *Aetna Life & Casualty Co.*, 795 F.2d 523 (5th Cir. 1986), and *Barrett* v. *Chevron U.S.A., Inc.*, 781 F.2d 1067 (5th Cir. 1986), the Fifth Circuit Court of Appeals addressed frequently recurring fact patterns. In *Waguespack*, the court decided that the issue whether a floating work platform could be a "vessel" for Jones Act purposes had been litigated and similarly decided in so many cases that it could conclude as a matter of law that the defendant's "work barges" were not "vessels," and thus uphold summary judgment on that issue. *Waguespack, supra* at 527. In *Barrett*, the court reversed the decision of the finder of fact on "seaman" status in the course of considering its criteria for deciding this issue in the context of "a question frequently confronted in this

A plaintiff establishes an evidentiary basis sufficient to get to the jury where there is evidence that (1) he was assigned "permanently"[13] to a vessel or performed a substantial part of his work on a vessel; and (2) he performed duties which contributed to the function or operation of the vessel during a trip or at anchorage in preparation for a trip, or which contributed to the mission of the trip. See *Bennett* v. *Perini Corp.*, 510 F.2d 114, 115 (1st Cir. 1975); *Offshore Co.* v. *Robison*, 266 F.2d 779, 799 (5th Cir. 1959). Reading the plaintiffs' complaints together with the reasonable inferences therefrom in the light most favorable to them, the plaintiffs alleged facts adequate to constitute such an evidentiary basis. Indeed, the defendants agree that the cadets were actively engaged in maintaining watch on the ship, which was in port, floating in navigable waters, awaiting a scheduled departure approximately one month later. These facts suffice to withstand a motion to dismiss. The defendants have not met their burden of establishing that "there is no set of facts which the plaintiff[s] could prove in support of [their] claim[s] which would entitle [them] to relief." *Howard* v. *G.H. Dunn Ins. Agency, Inc.*, 4 Mass. App. Ct. 868, 869 (1976). The development of additional facts after discovery may shed some light on the status of these plaintiffs.[14]

---

circuit: when is an offshore oilfield worker a 'seaman' for purposes of the Jones Act?" *Barrett, supra* at 1068. In contrast, the defendants themselves concede that this is a case of first impression.

[13]The Fifth Circuit defined "permanently" as " 'evincing a vessel relationship that is substantial in point and time and not merely sporadic.' In perhaps the broadest description we have said, '[T]he permanency requirement is, we think best understood as indicating that in order to be deemed a "seaman" within the meaning of the Jones Act "a claimant [must] have more than a transitory connection" with a vessel or a specific group of vessels.'

"These varying formulations reflect the principle that the permanent-attachment aspect of the crew member status determination as a whole, is an inherently factual question, and, as our cases since *Robison* made clear, it is generally a question for the fact-finder." (Footnotes omitted.) *Barrett* v. *Chevron, supra* at 1074.

[14]In a memorandum filed in the trial court, the defendants agreed that the "[p]laintiffs will first, prior to this Court determining application of the Jones Act, have to have the Court find that the Cadets are 'seamen' within

The defendants' second basis for their motions to dismiss the Jones Act claims, that the cadets were not "employees," also fails. "[I]t is now well established that an employee-employer relationship is essential for recovery under the Jones Act." *Bach* v. *Trident Shipping Co.*, 708 F. Supp. 772 (E.D. La. 1988). Accord *Cosmopolitan Shipping Co.* v. *McAllister*, 337 U.S. 783 (1949); *Cerqueira* v. *Cerqueira*, 828 F.2d 863 (1st Cir. 1987); *Spinks* v. *Chevron Oil Co.*, 507 F.2d 216 (5th Cir. 1975), clarified on other grounds, 546 F.2d 675 (5th Cir. 1977); 2 M. Norris, Law of Seamen § 30:14 (4th ed. 1985). The employer need not be the owner or operator of the ship, and a plaintiff may have more than one employer for Jones Act purposes. *Spinks, supra* at 224-225. The question who is the plaintiff's employer, and thus a proper Jones Act defendant, is to be answered by examining "the venture as a whole." *Cosmopolitan Shipping Co., supra* at 795. Lists of relevant factors to be considered vary slightly according to the court and the factual situation at hand. The following factors reappear most consistently on such lists: the control exercised over the details of the operation and the worker's performance of his duties, the power to hire and fire the worker, the method of payment, and the management and benefit of the operation as a whole. See *id.*; *Wheatley* v. *Gladden*, 660 F.2d 1024, 1026 (4th Cir. 1981); *Stephenson* v. *Star-Kist Caribe, Inc.*, 598 F.2d 676, 681 (1st Cir. 1979); *Spinks, supra* at 224; *Heath* v. *American Sail Training Ass'n*, 644 F. Supp. 1459, 1468 (D.R.I. 1986); *Petition of Read*, 224 F. Supp. 241, 246 (S.D. Fla. 1963). The most important factor is control. *United States* v. *W.M. Webb, Inc.*, 397 U.S. 179, 192 (1970); *Volyrakis* v. *M/V Isabelle*, 668 F.2d 863, 866 (5th Cir. 1982); *Heath, supra* at 1468. The identity of the person paying the worker is sometimes considered to be an extremely important factor, see *Guidry* v. *South La. Contractors, Inc.*, 614 F.2d 447, 454 (5th Cir.

the scope of the Act. This determination may require specific discovery in order to determine the exact factual and legal status of the Cadets onboard the BAY STATE."

1980), but payment is not necessary to establish the existence of an employment relationship. *Heath, supra* at 1468. *Petition of Read, supra.*[15]

Employment status, like "seaman" status, is a question of fact for the jury. *Wheatley* v. *Gladden, supra* at 1026. 2 M. Norris, Law of Seamen § 30:14 (4th ed. 1985). The plaintiffs have alleged that the cadets were performing duties on board ship pursuant to their position at the Academy. The parties agree that, at the time of the accident, the ship was under the control of the Academy. As the defendants themselves have conceded at an earlier point in the proceedings, additional facts are necessary to determine with certainty the status of these cadets on board the ship. See note 14, *supra.* The plaintiffs have alleged enough facts to survive a motion to dismiss. Unless it becomes apparent after discovery that there is no evidentiary basis for a finding that the plaintiffs are "seamen" and "employees," these questions should be submitted to the jury.

4. *Conclusion.* For the foregoing reasons, we hold that: (1) the defendants are immune from suit under the Jones Act and under general admiralty law unless they consent to be sued; (2) the defendants have consented to be sued for liability up to $100,000, pursuant to the Massachusetts Tort Claims Act; (3) the Superior Court has jurisdiction over the plaintiffs' general admiralty claims pursuant to the saving to suitors clause; and (4) the plaintiffs' status as seamen and employees under the Jones Act are factual questions for the jury. The Superior Court judge's denial of the motions to dis-

---

[15]In *Petition of Read,* the court found the claimant to be an "employee" although he received no payment of any kind. The petitioners were the owners and one of them the captain of a sailing yacht entered in an ocean race. The claimant, who had no previous acquaintance with the captain, came aboard the yacht because he wished to participate in the race. Only one of the persons on board was paid, but all were expected to help in sailing the boat. The court apparently based its determination that the claimant was an "employee" on the fact that he was expected to follow the captain's orders.

miss is affirmed. The cases are remanded to the Superior Court for further proceedings.

*So ordered.*