NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-358                                          Appeals Court

    JONATHAN B. MARSTON, conservator,[1]  vs.  JOSEPH M. ORLANDO[2] &
                           another.[3]


                          No. 18-P-358.

        Essex.      December 7, 2018. - June 25, 2019.

           Present:  Blake, Lemire, & Singh, JJ.


Attorney at Law, Malpractice.  Negligence, Attorney at law,
     Expert opinion.  Evidence, Legal malpractice, Expert
     opinion.  Admiralty.  Vessel, Seaman.  Practice, Civil,
     Judicial discretion.  Words, "Seaman," "Employee."



     Civil action commenced in the Superior Court Department on
March 6, 2013.

     The case was heard by Timothy Q. Feeley, J., and the entry
of judgment was ordered by him.


     Keith L. Miller for the plaintiff.
     Daniel R. Sonneborn for the defendant.

     ---

     [1] Of Norris Marston.

     [2] Individually and doing business as Orlando & Associates.

     [3] Brian S. McCormick.

BLAKE, J.  This legal malpractice action requires an understanding of the requirements for expert testimony under Fishman v. Brooks, 396 Mass. 643 (1986), and the duty of an attorney to properly advise a client when the law governing the client's case is unsettled.

Norris Marston (Norris)[4] suffered a severe brain injury after an accident at his work site, an offshore light tower. His attorneys secured a $7,500 lump sum settlement under the Massachusetts Workers' Compensation Act (Act), and then pursued Federal remedies, including a claim under the Jones Act, 46 U.S.C. § 30104 (2012), ultimately negotiating a $200,000 settlement.  The plaintiff, Norris's conservator, believing these settlements were woefully inadequate in light of Norris's injuries, sued the defendant attorneys for malpractice.  On the eve of trial, a judge of the Superior Court issued a number of rulings that led to the dismissal of all of Norris's claims against the attorneys.  This appeal followed.

On appeal, the plaintiff principally argues that the judge (1) misapplied Fishman v. Brooks, 396 Mass. 643, as to the requirements for expert testimony in a negligent settlement legal malpractice case; and (2) erred by finding that the lump sum settlement approved by the Department of Industrial

---

[4] To avoid confusion, we use the injured party's first name, as the conservator shares his surname.

Accidents (DIA) was not a final adjudication of Norris's employment status.[5]  For the reasons that follow, we reverse.

Background.  We recite the facts in the light most favorable to the plaintiff.  See Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).[6]  After a ship struck the Ambrose light tower (light tower), located approximately eight miles off the New Jersey coast, the United States Coast Guard, the owner of the light tower, became concerned about its structural integrity, and decided to completely disassemble it (project).  Costello Dismantling Company, Inc., was the general contractor.  Hallum Marine Construction (Hallum), one of the subcontractors, retained Norris to work on the project.[7]  On August 24, 2008, as Norris was cutting sections of a steel docking station attached to the light tower, the docking station

---

[5] The crux of the matter is whether Norris was a "seaman" when he was injured.  The Act expressly excludes "masters of and seamen on vessels engaged in interstate or foreign commerce" from the definition of "employee."  G. L. c. 152, § 1 (4) (a).  In contrast, the Jones Act, which "creates a statutory right of recovery for negligence," is limited to "seam[e]n."  Morris v. Massachusetts Maritime Academy, 409 Mass. 179, 190-191 (1991).

[6] The attorneys do not dispute the conservator's argument that the judge effectively granted summary judgment in favor of them.

[7] Hallum owns and operates a number of barges and tugboats, including, as herein relevant, a tugboat named the Miss Yvette.  The Semper Diving and Marine Corporation also provided subcontracting services on the project.

came loose, striking him on the head and driving him deep into the water, where he remained for a significant period of time. Norris was diagnosed with an anoxic brain injury.

A resident of Gloucester, Norris retained local attorneys Joseph M. Orlando and Brian S. McCormick, of the firm of Orlando & Associates (collectively, attorneys).[8]  The attorneys planned to seek damages exceeding $1,000,000 against Hallum and other parties under the Jones Act and related Federal statutes (collectively, Federal claims)[9] in the United States District Court.  They decided to first pursue Norris's remedies under the Act in proceedings before the DIA.[10]

---

[8] At the time, the website of Orlando & Associates stated that they specialized in civil litigation, with practice areas in maritime injuries and workers' compensation.  Attorney McCormick handled all of the workers' compensation cases in the office and performed most of the work on Norris's case.

[9] See note 13 and accompanying text, infra.

[10] Norris's case was the first time Attorney McCormick had pursued a claim under a State workers' compensation system before pursuing a Jones Act claim.  His previous experience was limited to filing claims for compensation under the Federal compensation system.  See Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901 et seq. (2013).  Under Federal law, an injured worker may obtain voluntary compensation benefits under the LHWCA without jeopardizing a subsequent Jones Act case so long as the compensation claim did not result in a formal award.  See Southwest Marine, Inc. v. Gizoni, 502 U.S. 81, 91 (1991).

1.  <u>DIA proceedings</u>.  On October 28, 2008, Attorney
McCormick filed a claim with the DIA.[11]  Although Hallum's
workers' compensation carrier, Farm Family Casualty Insurance
(Farm Family), opposed the claim, it agreed to commence
voluntary wage and medical payments.  See G. L. c. 152, § 19.
After the contested claim was assigned to an administrative
judge (AJ) for a conference, see G. L. c. 152, § 10A (1), Farm
Family moved to dismiss the claim, arguing that Norris was a
seaman on a vessel engaged in interstate commerce (seaman), and
thus ineligible to receive benefits under the Act.  In a
statement filed with DIA and presented to the AJ, Attorney
McCormick made the following representations about why Norris
was a land-based employee:

> "Here, [Norris] lacked the requisite connection to the
> Miss Yvette [Hallum's tugboat], necessary to qualify him as
> a seaman . . . .  The anticipated evidence . . . is as
> follows:
>
> "[Norris] picked up a truck owned by the principles
> [<u>sic</u>] of Hallum Marine Construction, and drove to Jersey
> City, NJ.  After waiving [<u>sic</u>] a period of time, the Miss
> Yvette appeared, and [Norris] boarded her.  The vessel
> steamed 10 miles offshore, taking between 3-4 hours of time
> before arrival.  The vessel was brought alongside the
> Ambrose Light Tower, where, over the following seventeen

---

[11] The preprinted DIA form completed by Attorney McCormick
was intended for use by "employees" claiming benefits as a
result of injuries or death.  As we have noted, the Act excludes
"seamen" from the definition of "employee."  See note 5, <u>supra</u>.
The DIA docketed Norris's claim and assigned a DIA board number.
For the four procedural stages of a workers' compensation
dispute, see <u>Fleming</u> v. <u>National Union Fire Ins. Co</u>., 445 Mass.
381, 384 (2005).

days, [Norris] spent virtually all of his work time, working with a blow torch, dismantling the structure. During this time frame, he did absolutely no work upon the Miss Yvette, but carried out all physical work activities on the structure itself. At the conclusion of his stint, the Miss Yvette carried him back to shore."

Following the conference, the AJ denied the claim for compensation, apparently concluding that Norris was a seaman. Attorney McCormick exercised Norris's right to appeal for a more complete evidentiary hearing. See G. L. c. 152, §§ 10A (3), 11. Before the hearing, Attorney McCormick settled Norris's case by lump sum agreement for $7,500 (Massachusetts or workers' compensation settlement). See G. L. c. 152, § 48 (1). Norris agreed to the settlement solely on the recommendation of the attorneys, who did not advise him of the potential risk to his Jones Act claims. On February 5, 2010, the AJ approved the agreement, concluding it was in Norris's best interest, and entered it as an administrative order of the DIA.[12]

---

[12] The settlement provided:

"Liability has NOT been established by standing decision of the Board, the Reviewing Board, or a court of the Commonwealth and this settlement shall redeem liability for the payment of medical benefits and vocational rehabilitation benefits with respect to such injury."

In addition to the $7,500 lump sum payment, Farm Family agreed to pay Norris's medical bills through the date of the conference. Farm Family refused to waive its $18,666.52 lien in the event of any third-party recovery.

2.  Jones Act proceedings.  On March 15, 2010, the attorneys filed an action under the Jones Act and general maritime law in the United States District Court for the District of Massachusetts (Federal court), raising negligence and maintenance and cure claims against Hallum (Jones Act case or claims); in addition, they asserted claims against several other parties (collectively with third-party defendants, Federal court defendants).[13]  As we have noted, the generous remedies provided under the Jones Act are limited to seamen.  See 46 U.S.C. § 30104; Morris v. Massachusetts Maritime Academy, 409 Mass. 179, 191 (1991).  "Whether under the Jones Act or general maritime law, seamen do not include land-based workers." McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 348 (1991). Attorney McCormick signed and submitted a sworn "Seaman's Affidavit" to the Federal court, averring that Norris was a "seaman."  In his memorandum of law in support of his motion to amend the complaint, Attorney McCormick made the following factual representations about Norris's status:

> "In August of 2008, the plaintiff was hired to act as a member of the crew of the Miss Yvette, a tugboat utilized

---

[13] Given the nature and the location of the accident and the potential overlapping jurisdiction, Norris also asserted claims against the Federal court defendants under the Federal Tort Claims Act, the Outer Continental Shelf Lands Act, and the LHWCA.  Hallum impleaded its insurance broker and its insurance agent over disputed coverage issues.  One Federal court defendant, the United States of America, was dismissed at summary judgment.

to transport barges to and from the Ambrose Lighthouse . . . . In the course of his work, [Norris] spent the vast majority of his time working on matters relating to the vessel, as well as the transport of materials to and from shore. He did, however, spend a small percentage of time working in actual dismantling operations on the platform itself. . . . [F]actually, the evidence to date supports that a substantial amount of plaintiff's duties were done upon the tender vessel, the Miss Yvette, as opposed to on the platform itself, thereby rendering him, under relevant Maritime law, a Jones Act seaman."[14]

During the proceedings, Hallum and the two third-party Federal court defendants raised the specter of the possible preclusion of the Jones Act claims due to the actions and positions taken at the DIA. Attorney McCormick addressed this defense in his mediation memorandum.

A one-day mediation session was held on October 17, 2011. Attorney Orlando advised Norris that if he did not take the final offer, he would lose at trial. Accordingly, Norris accepted $200,000 plus Farm Family's waiver of its $18,666.52 workers' compensation lien[15] in full settlement of his claims against all the Federal court defendants (Federal settlement). Within days, Norris retained new counsel. A petition for the appointment of a conservator on behalf of Norris was filed in

---

[14] Additionally, in Norris's confidential mediation memorandum, Attorney McCormick made the following statements to the Federal magistrate: Norris's "primary role in the job was to work on board the tug and barge. He did little actual construction site work."

[15] See note 12, supra.

the Probate and Family Court, and Norris's brother, Jonathan Marston, was appointed.  The conservator sought to intervene and reopen the Federal case on behalf of Norris.  His efforts were unsuccessful.

3.  Legal malpractice proceedings.  On March 6, 2013, the conservator filed this malpractice action in the Superior Court, asserting claims of negligence, breach of contract, and violations of G. L. c. 93A.  On June 25, 2015, a judge denied the conservator's motion for partial summary judgment on the basis that he lacked an expert witness on the relevant standard of care.  On October 14, 2015, Norris voluntarily supplemented his initial answers to expert interrogatories, reserving the right to supplement those answers at a later date.[16]  In March,

---

[16] Maureen Counihan, an experienced personal injury and workers' compensation attorney, opined, as is relevant here, that the attorneys breached the standard of care in the DIA proceeding by advising Norris to take a nominal lump sum settlement that terminated his ongoing medical and wage payments and potentially compromised his Jones Act case, and by advising Norris to accept a settlement offer in the Jones Act case that represented twenty percent of the reported value of the claim on the ground that he would lose at trial, and without revealing how the case had been compromised as a result of the attorneys' negligence.  We pause to note that in this context, expert testimony was necessary on the question whether the attorneys breached the standard of care.  See Pongonis v. Saab, 396 Mass. 1005, 1005 (1985).  Compare Greenspun v. Boghossian, 95 Mass. App. Ct. 335, 340-341 (2019) (experts should not be permitted to opine on questions of law).

2017, cross motions for summary judgment were denied by a second judge. Trial was scheduled for October 2, 2017.

Due to a scheduling conflict, the case was reassigned to a different session, and a third judge (trial judge) rescheduled the trial date to October 4, 2017. At a hearing on October 3, 2017, the judge made a number of rulings from the bench and thereafter issued a lengthy decision that effectively ended Norris's negligence and breach of contract claims. After additional proceedings, the judge extended his prior rulings to Norris's remaining G. L. c. 93A claims and dismissed the case.

Discussion. 1. Standard of review. To the extent the trial judge considered certain motions in the nature of summary judgment, we review those claims de novo, testing "whether, viewing the evidence in the light most favorable to the [conservator], all material facts have been established and the [attorneys are] entitled to a judgment as a matter of law." Augat, Inc., 410 Mass. at 120. We review the remaining rulings, including the exclusion of expert testimony and the denial of Norris's motion for leave to supplement answers to expert interrogatories for abuse of discretion or other error of law. See Baudanza v. Comcast of Mass. I, Inc., 454 Mass. 622, 631 (2009). Finally, we review de novo pure conclusions of law in the judge's decision on motions in limine. See Commonwealth v. Spencer, 465 Mass. 32, 46 (2013).

2. <u>Expert testimony</u>. The trial judge dismissed this case, first, by ruling both that Norris was required to show that the Federal settlement was unreasonable, and that Norris had failed to offer expert opinion supporting that position. The judge also ruled that Norris's theory of liability failed as a matter of law. We disagree with both rulings. This case was more than a negligent settlement case. The conservator maintained that the Massachusetts settlement had a preclusive effect on Norris's Jones Act claim, that the attorneys knew this and failed to disclose it to Norris, and that the attorneys intended to cause Norris to accept the inadequate Federal settlement to disguise their negligence.

a. <u>Trial within a trial</u>. <u>Fishman</u> permits clients claiming unreasonable settlements to proceed under one of two methodologies for trying their cases. The conservator elected to proceed under the first methodology outlined in <u>Fishman</u>, the so-called trial within a trial. <u>Fishman</u>, 396 Mass. at 647. In that approach, in a single proceeding, the same jury decides first, whether the attorney was "negligen[t] in the settlement of [the client's] claim and, second, if that were established, . . . whether, if the claim had not been settled, [the client] would probably have recovered more than he received in the settlement." <u>Id</u>. See <u>Kiribati Seafood Co., LLC</u> v. <u>Dechert LLP</u>, 478 Mass. 111, 117 (2017). This approach is of long-standing

origin, is more commonly used than the second Fishman

methodology, and provides a potential opportunity for greater

damages.[17]  See G. Jacobs & K. Laurence, Professional Malpractice

§ 16.40 (2007); McLellan v. Fuller, 226 Mass. 374 (1917).

To prevail on his chosen approach, the conservator was

required to prove that Norris probably would have obtained a

better result if the Federal claim had not been settled.  See

Fishman, 396 Mass. at 647.  Under that approach, the conservator

would first need to establish, to the satisfaction of a fact

finder, that the attorneys were negligent in recommending that

Norris first enter into the workers' compensation settlement,

and thereafter the settlement of the Jones Act claim.[18]  Id.

---

[17] Under the second approach, a client asserts that as a result of his attorney's negligence, he "lost a valuable right, the opportunity to settle the case for a reasonable amount without a trial."  Fishman, 396 Mass. at 647 n.1.  In this scenario, the client is entitled to damages consisting of "the difference between (a) the lowest amount at which his case probably would have settled on the advice of competent counsel and (b) the amount of the settlement."  Id.  Unlike the trial within a trial, this approach requires expert testimony as to the reasonable settlement value of the underlying case.  See id. at 647.

[18] Generally, expert testimony is required to establish the professional standard of care and any departures from it.  See Pongonis, 396 Mass. at 1005.  Here, the proper handling of a workers' compensation case and the mediation of the Federal case, as well as any attorney's disclosure obligations, were matters beyond the common knowledge of jurors, and accordingly warranted expert testimony.  On the other hand, expert testimony on the attorneys' alleged violation of the ethical standards would be inappropriate.  See Fishman, 396 Mass. at 650.

Second, assuming negligence was established, the "consequences," if any, of that negligence would be determined by presenting the underlying Jones Act case to the jury. See id. ("The original or underlying action is presented to the trier of fact as a trial within a trial"); G. Jacobs & K. Laurence, Professional Malpractice § 16.40, at 388 n.4 ("the trial within a trial concept encompasses proof of damages as well as causation, since the two are inextricably linked, damages being the amount or extent of the loss caused by the defendant attorney's negligence"). See also Frullo v. Landenberger, 61 Mass. App. Ct. 814, 818 (2004) (fact finder essentially decides causation and damages elements of malpractice claim). In this second portion of the proceeding, Norris would be required to establish not only the liability of one or more of the Federal court defendants, but also a damages amount exceeding the amount of the Federal settlement.[19] See Fishman, supra at 648.

The absence of an expert opinion on fair settlement value was not fatal to the conservator's legal malpractice case. Fishman teaches that while expert testimony on reasonable settlement value is admissible in this type of action, it is not required to establish the cause and extent of the client's

---

[19] If the jury determined that the value of the underlying claim was less than the $200,000 obtained in the Federal settlement, Norris would be unable to establish legal malpractice.

damages.  See Fishman, 396 Mass. at 647-648; Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C., 25 Mass. App. Ct. 107, 116 (1987) (under Fishman, "a jury in a malpractice action can decide without expert testimony . . . that the plaintiff in the malpractice action would have prevailed in his [underlying] . . . tort case").  Cf. Atlas Tack Corp. v. Donabed, 47 Mass. App. Ct. 221, 227 (1999) (contrasting Fishman).  Given the conservator's election to proceed under the first Fishman methodology, it was error for the trial judge to impose an extra burden on him -- a requirement that he show "loss/causation" through expert testimony as to reasonable settlement value.[20]

b.  Motion to supplement answers as to reasonable settlement value.[21]  After ruling that the conservator was

---

[20] As to the breach of contract claims, even assuming they were simply "restated" negligence claims, expert testimony on reasonable settlement value was not a required element of these claims.  The trial judge also erred by concluding that reasonable settlement value was an essential element of Norris's G. L. c. 93A claims, which rested on a very different factual predicate -- that the attorneys allegedly pressured Norris to settle the Jones Act claim in order to avoid a judicial determination as to whether the workers' compensation settlement precluded recovery under the Jones Act.  Causation and damages from the allegedly forced settlement, if any, may be established in the trial within a trial.

[21] As this issue has been briefed on appeal, we address it, notwithstanding our determination, supra, that under the trial within a trial approach, selected by the conservator, no expert opinion as to the reasonable settlement value of the Federal claims was required.

required to provide expert opinion as to the reasonable settlement value of the Federal claims, the trial judge denied the conservator's motion to further supplement his answers to expert interrogatories by adding such an opinion. Pursuant to Mass. R. Civ. P. 26 (e) (1) (B), the conservator had timely supplemented his initial answers. At summary judgment, the second judge had rejected, without comment, the attorneys' challenge to the adequacy of Norris's expert's opinion. The deficiency later identified by the trial judge -- the lack of expert testimony on fair settlement value -- was not raised until the eve of trial.[22] Up until that point, the conservator had no reason to suspect that anything might be missing from his expert disclosure.

As a result, the conservator orally requested leave to correct the deficiency, and within two days filed a written motion attaching the "missing" information.[23] See Atlas Tack

---

[22] We do not agree with the conservator's argument that the trial judge abused his discretion in reaching this issue. Since the precise issue was not before the motion judge, the trial judge did not abuse his discretion by reaching it. Moreover, even if the motion judge had earlier considered and rejected the alleged flaw in the conservator's case, the trial judge possessed the discretion to reconsider and to reverse the earlier ruling. See Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 401 (2003).

[23] The conservator sought leave to add the expert's opinion that the reasonable settlement value of the Federal claims was between $750,000 and $900,000.

Corp., 47 Mass. App. Ct. at 224, quoting Mass. R. Civ. P. 26 (e) (3) (plaintiff may "file[] a motion to supplement its answers with the necessary information 'at any time' prior to trial"). Despite the absence of prejudice to the attorneys, the judge denied the motion.[24] Under the circumstances, this was an abuse of discretion.

3. Effect of lump sum agreement. The trial judge concluded that while the lump sum agreement was a final adjudication of Norris's claim under the Act, it did not finally adjudicate the issue of Norris's status as a nonmaritime employee for purposes of future Jones Act claims.[25] The conservator, with support from his expert witness, maintains

---

[24] No postponement of the trial was requested by the conservator. As demonstrated by the attorneys' motion in limine for a trial within a trial, the conservator's intentions were disclosed earlier in the case. The attorneys never sought to depose Norris's expert or to compel further answers to expert interrogatories.

[25] As to the DIA settlement agreement, the judge reasoned that (1) the approval of a $7,500 lump sum agreement in exchange for a $1,000,000 claim "was certainly not in [Norris's] best interest," and thus could not be used to bar the Jones Act claim; (2) "[o]ne of the stated terms of the compromise agreement was an acknowledgement that [Norris's] entitlement to benefits was in question, and that his entitlement to benefits was not being established by the agreement"; (3) the status issue that the AJ decided adversely to Norris was not final due to administrative appellate rights; and (4) "[i]t is inconceivable that the parties, under their compromise settlement, intended to or did incorporate into their agreement a binding reversal of the DIA's preliminary determination that [Norris] was not eligible for compensation because he was a seaman."

that the agreement to accept a lump sum settlement in the DIA proceeding resulted in a "final adjudication" that potentially precluded Norris's subsequent Jones Act claims.  Cf. Martin v. Ring, 401 Mass. 59, 60 (1987).  We conclude that, in the context of this case, it was error to reach the question whether the workers' compensation settlement had preclusive effect on the Jones Act claim.  In fact, this was an issue that was not settled at the time of these proceedings.  And it is the unsettled state of the law that is pertinent in assessing any negligence on the part of the attorneys.

For example, at the time of the proceedings below, the Federal courts were divided as to whether a formal award of benefits in a contested proceeding under a Federal analog to our Act, the Longshore and Harbor Workers' Compensation Act (LHWCA), barred subsequent Jones Act claims.  There were a plethora of published cases in which courts, applying principles of res judicata, concluded that the Jones Act claims were in fact barred in such circumstances.[26]  Here, because of the mediated

---

[26] See, e.g., Sharp v. Johnson Bros., 973 F.2d 423, 426-427 (5th Cir. 1992) (holding that Department of Labor administrative law judge's order approving settlement under LHWCA constituted "formal award" barring Jones Act suit, even where status issue had not been litigated); Anders v. Ormet Corp., 874 F. Supp. 738, 741 (M.D. La. 1994) (construing administrative law judge's decision under LHWCA as "formal award" under Gizoni, 502 U.S. at 91 [see note 10, supra], and holding that, where parties had fully litigated seaman status before administrative law judge, Jones Act action was barred, and plaintiff was collaterally

Federal settlement, the Federal court never reached the estoppel issues. To date, the United States Court of Appeals for the First Circuit has yet to decide the issue.[27]

Given the unsettled state of the law, the attorneys had the duty to fully disclose the potential consequences to Norris before recommending that he accept the Massachusetts settlement. See Williams v. Ely, 423 Mass. 467, 476-477 (1996). Contrary to the trial judge's assertion, the preclusive bar had been raised in the Federal proceedings. The attorneys' failure to alert Norris to the uncertainty deprived him of the opportunity to assess the risk and was an actionable basis of negligence. See Hendrickson v. Sears, 365 Mass. 83, 90 (1974) ("The attorney owes his client a duty of full and fair disclosure of facts

---

estopped from relitigating issue). Contrast Figueroa v. Campbell Indus., 45 F.3d 311, 315-316 (9th Cir. 1995) (recovery under LHWCA did not bar Jones Act action for pain and suffering where no express administrative finding as to whether employee was seaman).

[27] Following the attorneys' representation at issue in this case, a Federal magistrate construed Maine's workers' compensation statute which, like the Act, excludes seamen from coverage. See Polak v. Riverside Marine Constr., Inc., 22 F. Supp. 3d 109 (D. Mass. 2014). Applying the Maine law of res judicata, the magistrate concluded that a consent decree approving the parties' settlement agreement under the Maine workers' compensation statute precluded the plaintiff from claiming seaman status under the Jones Act. See id. at 118-120.

material to the client's interests").  The case was therefore improperly dismissed.[28]

Conclusion.  The judgment dismissing the conservator's complaint is reversed, and the case is remanded for further proceedings consistent with this opinion.[29]

So ordered.

---

[28] The attorneys argue that even if Norris's Jones Act claims against Hallum were extinguished, there is no reason why he could not have recovered in full against the other Federal court defendants.  There is no merit to that claim.  On the conservator's theory of his case, the attorneys intentionally forced a settlement of all claims in order to avoid the exposure of their negligence.  Put another way, as a result of their unfair and deceptive conduct, the attorneys allegedly deprived Norris of a trial on these claims.

[29] The trial judge indicated that if this court finds error and reverses the judgment, he will recuse himself from further proceedings.  In light of this representation, we need not address the propriety of the denial of the recusal motions, as a different judge shall be assigned to this matter.